IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION


BARRY MCMILLIAN                                        PLAINTIFF

VS.                          CIVIL ACTION NO. 1:24-CV-199-GHD-RP

CITY OF ABERDEEN                                        DEFENDANT




**************************************************************


DEPOSITION OF MELISSA MOORE


**************************************************************




TAKEN AT THE INSTANCE OF THE PLAINTIFF
AT THE ABERDEEN CITY HALL, 125 WEST COMMERCE STREET,
ABERDEEN, MISSISSIPPI,
ON MARCH 31, 2026, BEGINNING AT 10:23 A.M.




GENA MATTISON GLENN, MS CSR 1568, TN LCR 884
Glenn-Henry Reporting
Post Office Box 492
Amory, Mississippi  38821-0492
gena.glenn@gmail.com
(662) 315-2613

EXHIBIT F

APPEARANCES:

DEMOREO REDDICK
      P.O. Box 465
      Okolona, MS  38860
      For the Plaintiff

PHELPS DUNBAR
      P.O. Box 320159
      Flowood, MS  39232
      For the Defendant
      BY:  LODEN P. WALKER

ALSO PRESENT:  BARRY McMILLIAN

Reported by:  GENA MATTISON GLENN,
           MS CSR 1568, TN LCR 884

EXHIBIT F

A. No, this is a different -- because, see, this one Barry wasn't in on this meeting. On this particular meeting it was me, Charles Scott, Triron Brown, and Marcus Collins.

Q. And what about Mr. McMillian?

A. He wasn't in on that meeting.

Q. Okay. What date was that meeting?

A. Of which one?

Q. The one you just said it was you Charles, Collins, and Brown.

A. That's the November 30th, 2023.

Q. Okay. Was that meeting recorded?

A. I do not believe so. I don't remember the previous mayor, Charles Scott, saying that that meeting was recorded. He just stated that once the meeting was ended, just do a memorandum of record about what had happened.

Q. Did you write a memorandum for that meeting?

A. Yes, sir.

Q. Okay. And just to make sure -- because you said -- you have the November 30th, 2022. What about the --

A. '23.

Q. '23?

A.    Uh-huh.

Q.    Are you familiar with the time clocking system in the water department?

A.    Yes, sir.

Q.    Okay.  How -- just walk me through briefly just what the process is of clocking in and clocking out.

A.    The process of all city employees clocking in and out, you have to -- the comptroller gave everybody, like, an assigned ID number.  Just like a two --

Q.    Like, an employee number?

A.    Like, an employee ID number.  And then you have to know the -- it's the last four numbers of your Social.  And that's the only way you can clock in.  You have to do the employee ID number, and then you have to use the last four of your Social.

Q.    So it's not as similar as just clicking somebody's name?

A.    No, sir.

Q.    You have to know their employee number, which is two digits, and then also the last four of their Social?

A.    Of their Social.

Q.   Okay.  All right.  Jump forward to --
you mentioned the November 30, 2023, meeting --

A.   Yes, sir.

Q.   -- that you were there with
Mr. Brown --

A.   Yes, sir.

Q.   -- as well as Mr. Scott?

A.   Yes, sir.

Q.   And Mr. Collins?

A.   Yes, sir.

Q.   But Barry was not there?

A.   No, Barry was not in that one.  No,
sir.

Q.   Okay.  What do you recall Mr. Brown,
if anything, saying during that meeting?

A.   In that meeting Mayor Scott --
previous mayor, Charles Scott, asked Triron
Brown if he was willing to share information as
to what happened on the date of November 27th,
2023.  And Triron Brown told him that he had
clocked in Barry McMillian that day.  He said
but that was the only time that he had ever done
it.

And so Triron said, Well, if we're
going to talk about this, we might as well just

bring everybody in because a lot of people are clocking other people in. But the previous mayor, Charles Scott, said, We're -- the concern now is of you, not anybody else.

And so Marcus Collins would tell him, Just tell the truth. You need to tell the truth. And so he told that he did clock him in.

Mayor Scott -- previous mayor, Charles Scott, asked him if he wanted to do a written statement. Mr. Brown said, No, I don't want to do a written statement. He said, But I am admitting to you that I did clock him in that day, but I've only clocked him in that one time.

So Mayor Scott was telling him, said, Well, more than likely you're going to have to come to the board meeting because you're going to be asked -- this is going to come up at the board meeting I have in closed determination of our executive session.

So Triron Brown said, Well, I -- I don't -- I -- I don't want -- I don't want to do that because I know how the city is. I know how -- I already know that more than likely they're just going to fire me anyway, so what's the purpose of me coming to the meeting? I might as

well just turn my stuff in now.

And then the previous mayor said, Well, no, don't do that. He said, I'm just going to have a talk with the board and see. You know, maybe they'll just suspend you. He said, But we just need you to show up.

And then Marcus Collins was saying, You know, you're a really good worker, Triron. We really don't want to lose you as a city employee because you're -- you know, you just -- just did something wrong that day.

And so then he agreed. Triron Brown agreed, I'll -- you know, that he'll come to the meeting and tell the board what happened.

Q. Okay. Do you -- did Mr. Brown go to the December 5th board meeting?

A. He was at that next board meeting after that meeting.

Q. Okay.

A. Yes, sir.

Q. Do you recall if Mr. Brown said anything during that meeting?

A. Like I said, he went into closed determination. Closed determination --

Q. The board did?

GENA MATTISON GLENN, gena.glenn@gmail.com

A.   Yeah.  You go into -- when it -- when it's a personnel matter, personnel matters cannot be discussed publicly because you have to protect the rights of that individual.  And like I said, during that kind of session of time, you have everybody to be excused from the room except the board members, the mayor, myself.

And there were -- like, closed determination, the board will say, Okay, this is the matter at hand.  And then they'll say, Well, let's call in and talk to whomever we need to talk to.

And then the board did call -- when they went into executive session, they called Mr. Brown in and had a conversation with him.  Now, am I privy to share that information?  I have to be real careful, once again, because that's closed determination.

Q.   Right.  Do you -- we can keep it brief if you want, but do you recall, did Mr. Brown just reiterate or repeat what he told Mayor Scott during the November 30th meeting?  Did he just tell the board that during that --

A.   He did.  He shared with the board that he had clocked Mr. McMillian in.

C E R T I F I C A T E

STATE OF MISSISSIPPI )

COUNTY OF MONROE      )

RE:  ORAL DEPOSITION OF MELISSA MOORE

I, Gena Mattison Glenn, CSR 1568, a Notary Public within and for the aforesaid county and state, duly commissioned and acting, hereby certify that the foregoing proceedings were taken before me at the time and place set forth above; that the statements were written by me in machine shorthand; that the statements were thereafter transcribed by me, or under my direct supervision, by means of computer-aided transcription, constituting a true and correct transcription of the proceedings; and that the witness was by me duly sworn to testify to the truth and nothing but the truth in this cause.

I further certify that I am not a relative or employee of any of the parties, or of counsel, nor am I financially or otherwise interested in the outcome of this action.

Witness my hand and seal on this 13th day of April, 2026.

_____

My Commission Expires:          MS CSR 1568
July 19, 2027                   Notary Public
                                TN License No. 884

EXHIBIT F         GENA MATTISON GLENN, gena.glenn@gmail.com