## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

**BARRY MCMILLIAN**                                                    **PLAINTIFF**

**vs.**                                        **CIVIL ACTION NO.: 1:24-CV-199-GHD-RP**

**CITY OF ABERDEEN, MISSISSIPPI**
**AND JOHN DOES 1-20**                                                **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant the City of Aberdeen submits this Memorandum in Support of Motion for Summary Judgment:

### INTRODUCTION

Defendant the City of Aberdeen employed Plaintiff Barry McMillian as an at-will laborer from October 2021 to December 2023. On March 7, 2022, McMillian submitted an EEOC charge against the City, alleging race discrimination under Title VII concerning the start of his employment. Twenty-one months later, the City terminated McMillian for asking a co-worker to clock him in on a day that he was absent. After his termination, McMillian filed a second EEOC charge, alleging retaliatory termination under Title VII. This lawsuit addresses the latter allegations.

McMillian sues the City for retaliation under Title VII, § 1981, and the Family Medical Leave Act (FMLA). He also brings a separate claim of FMLA interference. Given the uncontested facts and McMillian's lack of proof, all claims against the City should be dismissed under Federal Rule of Civil Procedure 56.

### RELEVANT FACTUAL BACKGROUND

This is the third federal employment lawsuit filed by McMillian, each seeking damages and reinstatement to three different positions in the City of Aberdeen. After he was terminated

from the Aberdeen School District, won a jury a trial before Judge Aycock, and successfully petitioned the Fifth Circuit to have him "reinstated to the next available position at the District for which he is qualified," *McMillian v. City of Aberdeen School District*, No. 24-60419, 2025 WL 2529928 (5th Cir. June 23, 2025), McMillian filed two more federal employment lawsuits against the City on October 30, and October 31, 2024.

In the first case, which is not at issue here, McMillian alleged that he was racially discriminated against when the City told McMillian that he couldn't begin a job in the electrical department due to budget constraints and offered McMillian employment in the water department instead, which he accepted. McMillian claimed however that in the following two years, the City hired three white males to work in the electrical department after turning McMillian away. This Court granted the City's motion for judgment on the pleadings, dismissing all claims. *McMillian v. City of Aberdeen*, No. 1:24-CV-198-GHD-DAS, 2025 WL 1372858 (N.D. Miss. May 12, 2025).

The day after filing that lawsuit, McMillian filed a third lawsuit (i.e., his second against the City)— the one at issue here, alleging that the City retaliated against him by terminating his employment because he filed an EEOC charge regarding the beginning of his employment.[1]

*       *       *

The City hired Plaintiff as a full-time laborer on October 5, 2021.[2] His job duties included assisting operations in the water department and "fix[ing] water leaks."[3] On March 7,

---

[1] Of course, the question arises: If McMillian seeks reinstatement to three different full-time positions, can this Court afford him the relief that he seeks? That poses standing questions—more specifically redressability questions, at least for that specific form of relief. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("[P]laintiffs must demonstrate standing for each claim that they press against each defendant, *and for each form of relief that they seek*." (citation and quotation marks omitted) (emphasis added).

[2] Exhibit A, Excerpts of Barry McMillian Depo. Tr, at 32; Exhibit B, September 21, 2021 Board Minutes.

[3] Exhibit A, Excerpts of Barry McMillian Depo. Tr, at 52.

2

2022, McMillian filed a charge of discrimination with the EEOC, alleging race discrimination under Title VII, arising from the outset of his employment and his reassignment from the electrical department to the water department.[4] The instant case arises from McMillian's termination nearly two years later.[5]

McMillian contends that the City "falsely accused" him of asking a coworker, Triron Brown, to clock him in and out on November 27, 2023.[6] On that day, McMillian was returning from a trip to Las Vegas.[7] The City investigated the matter and obtained both verbal and written statements from Brown admitting that, at McMillian's request, he clocked McMillian in and out on November 27, 2023.[8] [9] Brown reiterated those facts to the City's Board of Aldermen during executive session at a December 5, 2023 board meeting.[10] Following that, the Board of

---

[4] Exhibit C, March 7, 2022 EEOC Charge of Discrimination (No. 432-2022-00047).

[5] Exhibit D, December 5, 2023 Board Minutes; *see also* December 11, 2023 EEOC Charge of Discrimination (No. 423-2024-00292) [34-1].

[6] Am. Compl. [34] at 3.

[7] Exhibit A, Excerpts of Barry McMillian Depo. Tr, at 69.

[8] Exhibit E, November 30, 2023 Interoffice Memorandum; *see also* Exhibit F, Excerpts of Melissa Moore Depo. Tr., at 12 (testifying that she drafted a memorandum concerning the November 30, 2023 meeting), 39–41 (testifying as to what happened and what was said during the November 30, 2023 meeting); *see also* Exhibit G, Brown's Written Statement.

[9] During his recent deposition, Brown attempted to walk back his prior admissions, testifying that he "accidentally" clocked McMillian in. Exhibit H, Excerpts of Triron Brown Depo. Tr., at 43. That account is inconsistent with what Brown told the Board of Aldermen on December 5, 2023; and in any event, it's impossible to "accidentally" clock someone in.

As the record shows, clocking in an employee is not something that can occur by happenstance or a miss click. The process requires entering the employee's unique two-digit identification number, along with the last four digits the employee's Social Security number. Exhibit F, Excerpts of Melissa Moore Depo. Tr., at 38.

The City obtained text messages from Brown asking for McMillian to be clocked in. Exhibit I, Employee Disciplinary Report. The person who texted Brown then provided McMillian's employee unique employee identification number (27), the last four digits of McMillian's social, and McMillian's date of birth. *Id.*; *see also* Exhibit A, Excerpts of Barry McMillian Depo. Tr, at 61 ("My number was 27."), 14 (providing last four digits of social).

[10] *E.g.*, Exhibit F, Excerpts of Melissa Moore Depo Tr., at 41–42.

Aldermen voted 3-1-1 (i.e., Alderwoman Lady Garth recused) in favor of terminating McMillian for violating the City's timekeeping and honesty policies and to suspend Brown without pay for three days.[11]  The board members later explained that Brown was suspended without pay—but not terminated—because he was forthcoming about the misconduct, while McMillian was not.[12]

Six days after termination, McMillian filed a (second) charge of discrimination with the EEOC, this time alleging retaliation under Title VII.[13]  McMillian's retaliation theory is that he was terminated because he'd filed a charge of discrimination with the EEOC two years prior, on March 7, 2022, about the beginning of his employment.

**RELEVANT PROCEDURAL HISTORY**

On October 31, 2025, McMillian filed the instant lawsuit against the City, claiming age discrimination and retaliation under Title VII, ADEA, and § 1981, FMLA retaliation and interference, and procedural due process violations under § 1983 and the U.S. and Mississippi Constitutions.  Compl. [1].  The City moved for judgment on the pleadings, which was partially granted.  Opinion [30].  Following dismissal, McMillian was permitted to file an Amended Complaint and did so.  Am. Compl. [34].  The only remaining claims are McMillian's retaliation claims under Title VII, § 1981, and FMLA and the FMLA interference claim.  Order [31].

Discovery ensued.  During discovery, McMillian deposed the three board members who voted in favor of termination (Alderman Edward Haynes, Alderman Shea Cain, and Alderwoman Carolyn Odom), as well as Triron Brown (the coworker who admitted to clocking McMillian in and out), City Clerk Melissa Moore, Water Department Supervisor Marcus Collins, and his

---

[11] Exhibit D, December 5, 2023 Board Minutes.

[12] Exhibit J, Excerpts of Edward Haynes Depo Tr., at 11–12 (stating he voted to terminate McMillian because he lied and suspended Brown because he admitted to assisting McMillian); *e.g.*, Exhibit F, Excerpts of Melissa Moore Depo Tr., at 41 (explaining that the Mayor recommended suspension for Brown because he admitted to the wrongdoing).

[13] December 11, 2023 EEOC Charge of Discrimination (No. 423-2024-00292) [34-1].

4

brother, Water Department Supervisor Johnny McMillian. McMillian did not depose Mayor Charles Scott, who served as Mayor at the time of termination and led the investigation into the clocking in and clocking out allegations, or the other two board members (Alderman Nicholas Holliday and Alderwoman Lady Garth). The City deposed McMillian, as well as Brown, Moore, Collins, and Johnny McMillian.

The City now moves for summary judgment on all claims under Federal Rule of Civil Procedure 56.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment must be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. A fact is material only if it is essential to the plaintiff's cause of action under an applicable theory of recovery, and the plaintiff could not prevail without it. *Celotex v. Cartrett*, 477 U.S. 317, 322–23 (1986). The movant's burden is to merely point out the absence of evidence supporting the nonmovant's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

Once the movant meets this burden, the nonmovant must go beyond the pleadings and "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence support[s] [his] claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Allegations without substance will not defeat summary judgment. *Celotex*, 447 U.S. at 321. If the nonmovant fails to meet this burden, the motion for summary judgment must be granted. *Stults*, 76 F.3d at 656–57 (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

PD.61740265.1

**ARGUMENT AND AUTHORITIES**

McMillian advances retaliation claims under Title VII, § 1981, and FMLA. He also brings a separate claim of FMLA interference. The retaliation claims are addressed first, followed by the interference claim. All claims must be dismissed.

**I. McMillian cannot establish a retaliation claim under Title VII, § 1981, or FMLA.**

McMillian filed a charge of discrimination with the EEOC on March 7, 2022.[14] Twenty-one months later, on December 5, 2023, the City terminated his employment after determining that he'd asked a coworker to clock him in and out on a day that he was absent.[15] McMillian now alleges that his termination was in retaliation for filing the March 7, 2022 EEOC charge.[16]

Courts analyze FMLA retaliation claims under the same standard as Title VII retaliation claims. *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023) ("[FMLA retaliation claims] are analyzed under the same framework as Title VII retaliation claims."). The same is true for § 1981 retaliation claims. *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 (5th Cir. 2003).

To establish a prima facie case of retaliation under these statutes, a plaintiff must demonstrate that "(1) []he was engaged in a protected activity; (2) []he was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and adverse employment action." *Norsworthy*, 70 F.4th at 336.

If met, "the burden shifts to the employer to articulate a legitimate, . . . non-retaliatory reason for its employment action." *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir.

---

[14] Exhibit C, March 7, 2022 EEOC Charge of Discrimination (No. 432-2022-00047).

[15] *E.g.*, Exhibit J, Excerpts of Edward Haynes Depo. Tr., at 9–14, 54

[16] Am. Compl. [34] at 2.

2021) (citation omitted). "If the employer does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for the . . . retaliatory purpose." *Id.*

Summary judgment is warranted on McMillian's retaliation claims because he cannot establish pretext. To meet its burden, the City is only required to articulate—but not prove—a legitimate, nonretaliatory reason for its termination decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Shahrashoob v. Texas A&M Univ.*, 125 F.4th 641, 653 (5th Cir. 2025) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). In other words, "[e]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason for an adverse employment action." *Saketoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1002 n.8 (5th Cir. 2022).

The City easily meets its burden. The Board of Aldermen determined that McMillian sought to receive pay to which he was not entitled by asking a coworker, Triron Brown, to clock him in and out on November 27, 2023—a day McMillian was absent and on vacation.[17] McMillian does not dispute that this was the stated reason for his termination; instead, he contends it was pretext for retaliation.[18] The record forecloses that argument.

To be sure, the City's stated reason for termination is amply supported. An interoffice memorandum from City Clerk Melissa Moore reflects that Brown admitted to clocking McMillian in and out and further agreed to provide a written statement to Mayor Scott.[19] Brown

---

[17] Exhibit A, Excerpts of Barry McMillain Depo Tr., at 68–69 (testifying that he was absent from work on November 27, 2023 because he was in Las Vegas).

[18] Am. Compl. [34] at 3.

[19] Exhibit E, November 30, 2023 Interoffice Memorandum; *see also* Exhibit F, Excerpts of Melissa Moore Depo. Tr., at 12 (testifying that she drafted a memorandum concerning the November 30, 2023 meeting), 39–41 (testifying as to what happened and what was said during the November 30, 2023 meeting).

PD.61740265.1

did so on November 30, 2023.[20]  On December 1, 2023, McMillian's supervisor submitted an Employee Disciplinary Report and supporting text messages confirming that McMillian had been clocked in despite his absence.[21]  The Mayor then suspended McMillian for violating the City's timekeeping and honesty policies and directed him to appear before the Board of Aldermen at a December 5, 2024 board meeting.[22]  Time records further confirm that McMillian was clocked in on a day he was not present—a fact he does not dispute.[23]

Three board members—Alderman Edward Haynes, Alderman Shea Cain, and Alderwoman Carolyn Odom—voted in favor of termination.[24]  One board member, Alderwoman Lady Garth, recused, and the remaining board member, Alderman Nicholas Holliday, voted against termination.[25]

The three board members who voted in favor of termination uniformly testified at their depositions that his misconduct drove their termination decision.  Alderman Cain testified that McMillian was clocked in using his identifying information while he was out of town and that he voted to terminate based on that information, which was presented to him during the board meeting.[26]  City Clerk Moore also confirmed that Triron Brown admitted to the board members

---

[20] Exhibit G, Brown's Written Statement.

[21] Exhibit I, Employee Disciplinary Report.

[22] Exhibit K, Suspension Letter; *see also* Exhibit L, Employee Behavior Policy (providing that an employee can be discharged for falsifying a timecard and embezzlement); Exhibit M, Signed Acknowledgment Receipt of Employee Handbook.

[23] Exhibit N, November Timeclock Record; *see also* Exhibit A, Excerpts of Barry McMillian Depo Tr., at 77; Am. Compl. [34] at 3 ("On November 27, 2023, the Plaintiff was not in the state of Mississippi when he was clocked in for work[.]").

[24] Exhibit D, December 5, 2023 Board Minutes, at 3–4.

[25] *Id.*

[26] Exhibit O, Excerpts of Shea Cain Depo. Tr., at 17, 31 (Alderman Cain testifying that he "made an informed decision to terminate Mr. McMillian based on what [he] was told in th[e] boardroom[.])"

8

that "he had clocked Mr. McMillian in" at the board meeting.[27]  Alderwoman Odom similarly testified that she voted to terminate because McMillian sought payment for time he did not work: "[McMillian] wanted to be paid for time that he weren't – wasn't there."[28]  Alderman Haynes— who played a major role in helping secure McMillian's employment with the City in 2021— likewise voted in favor of termination after learning that Brown had clocked McMillian in at his request.[29]

Because the City has articulated a legitimate, non-retaliatory reason for his termination, the burden shifts back to McMillian to show that reason is "pretext for retaliation[.]" *Shahrashoob*, 125 F.4th at 653 (citation omitted) (alteration in original).  To do so, McMillian must show 'that the adverse action would not have occurred 'but for' the employer's retaliatory motive[.]"  *Id.* (alteration in original).  "Specifically, [he] must show 'a conflict in substantial evidence' as to but-for causation to avoid summary judgment."  *Id.* (citation omitted).  "At this juncture, [the Court] consider[s] 'numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'"  *Id.* (citation omitted).

McMillian's prima facie case is pencil thin.  He cannot establish causation through temporal proximity and can offer nothing beyond bare knowledge of his protected activity.  The twenty-one month gap between his March 7, 2022 EEOC charge and his December 5, 2023 termination "suggests, by itself, no causality at all[.]"  *Clark Cnty. Sch. Dist. v. Breeden*, 532

---

[27] Exhibit F, Excerpts of Melissa Moore Depo Tr., at 42.

[28] Exhibit P, Excerpts of Carolyn Odom Depo. Tr., at 52–53.

[29] Exhibit J, Excerpts of Edward Haynes Depo. Tr., at 9–14, 54, 68 (After Triron Brown "talked to the board, [and] informed the board that he, at Barry's request, [] he clocked him in," Haynes voted in favor of termination.").

U.S. 268, 273–74 (2001) (holding that adverse action taken twenty months after the protected activity suggest no causation); *see also, e.g.*, *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (suggesting that a period of two-and-a-half-months is the longest acceptable timeframe to establish a causal connection for retaliation purposes).

The knowledge prong is just as frail. It is undisputed that McMillian's EEOC charge was not discussed at the December 5, 2023 board meeting.[30] The board members further testified that the EEOC charge played no role in their termination decision. Alderman Haynes testified that McMillian had every right to file the charge and that it carried "no bearing whatsoever" on the termination decision: "We didn't terminate him because of the EEOC. It was due to stealing time."[31] Alderman Cain likewise rejected any suggestion of retaliation: "Q. [D]o you believe the City of Aberdeen retaliated against Mr. McMillian by terminating him for him filing this charge right here, this [March 7, 2022] EEOC charge 423-2022-00047[?] A. Oh no, absolutely not."[32] *See, e.g.*, *Awe v. Harris Health Sys.*, 163 F.4th 969, 976 (5th Cir. 2026) (Elrod, C.J., concurring) ("But because Awe's employer was able to provide a non-retaliatory reason for its action that Awe failed to rebut, he loses. Consequently, although Awe has raised genuine disputes of fact relevant to whether retaliation occurred, he is left without a chance to prove his case before a jury.").

The same is true of any alleged FMLA request. The board members testified that it did not factor into their decision, and Alderman Cain further testified that he was not even aware of

---

[30] Exhibit P, Excerpts of Carolyn Odom Depo. Tr., at 54.

[31] Exhibit J, Excerpts of Edward Haynes Depo. Tr., at 42 ("[I]t was his right as a citizen, as an employee, that was his right to file that. There shouldn't be any backlash because he's seeking something that he thinks may be a violation of his rights."), 61 ("I stated to you earlier, as a citizen, as a taxpayer, as a human being, he has rights. And he has a right to file a EEOC whether I thought it was good or bad. It doesn't weigh any bearing whatsoever. He has a right to that. So, therefore, he's entitled to follow those steps [to] the best of his ability.").

[32] Exhibit O, Excerpts of Shea Cain Depo. Tr., at 124.

10

it.[33]  *E.g.*, *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity.").

Notably, McMillian also admits that he lacks personal knowledge of why the board members voted to terminate him and instead relies solely on their deposition testimony.[34]  It is also significant that McMillian lacks personal knowledge as to any other board member or Mayor Scott.  Nor can he identify any other evidence from other decisionmakers suggesting retaliatory motive.  The absence of proof is fatal to his claims.

At bottom, McMillian attempts to cast his case as one of factual innocence (i.e., proving that he was "falsely accused").  But that misses the mark.  The "question is not whether an employer made an erroneous decision; it is whether the decision was made with [retaliatory] motive."  *Roundtree-McCoy v. Miss. Valley State Univ.*, No. 3:14-CV-747, 2016 WL 4821647, at *3 (S.D. Miss. Sept. 13, 2016) (citation omitted); *see also Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (holding that an employee's claim that his employer was "out to get him" because he was successful at "what he was doing," even if true, did not support a claim, as "Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus"); *accord Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 276 (5th Cir. 2006).

---

[33] Exhibit J, Excerpts of Edward Haynes Depo. Tr., at 63–64 ("None whatsoever. My decision was not based off none of that."); Exhibit P, Excerpts of Carolyn Odom Depo. Tr., at 51 ("Q. Do you think the City of Aberdeen retaliated against him for trying to get his FMLA benefits to cover the November 27, 2023 [absence]? A. No. Q. Okay. What about yourself? Did you – A. No."); Exhibit O, Excerpts of Shea Cain Depo. Tr., at 126.

[34] Exhibit A, Excerpts of Barry McMillian Depo. Tr., at 87–89.

PD.61740265.1

Finally, the body that terminated McMillian was the City's Board of Aldermen. In that context, the Fifth Circuit requires McMillian to prove that "a <u>majority</u> of the board had the requite animus." *Harville v. City of Houston*, 945 F.3d 870, 878 (5th Cir. 2019) (cleaned up) (emphasis added). Such a showing always presents a high burden because "collective decision-making is less susceptible" to unlawful motives. *Wu v. Miss. State Univ.*, 626 F. App'x 535, 538 (5th Cir. 2015). He cannot make this showing. Nor does he attempt to do so in his Amended Complaint. Summary judgment should be granted as to the Title VII, § 1981, and FMLA retaliation claims.

*     *     *

McMillian also attempts—half-heartedly—to assert that the City denied him overtime in October and November 2023 in retaliation for his March 7, 2022 EEOC charge.[35] Even assuming this claim is properly before the Court, it fails as a matter of law.

McMillian's own testimony defeats it. During his deposition, he testified that overtime in the water department rotated among four employees and that he typically worked three overtime calls per month.[36] But in September 2023, McMillian underwent gallbladder surgery, requiring an overnight hospital stay and a period of light duty, restricted activity, including a weight-lifting restriction of "15 pounds."[37] His treating physician placed him on light duty in October, which extended until November 8, 2023.[38] Due to the light duty restriction, McMillian testified that the City had McMillian fulfill duties "around the shop," such as "mop[ping]" the floor and cleaning

---

[35] Am. Compl. [34] at 5.

[36] Exhibit A, Excerpts of Barry McMillian Depo. Tr., at 59.

[37] *Id.* at 54, 90–94; *see also* Exhibit Q, Release from Light Duty Restriction (releasing McMillian back to full duty as of November 8, 2023).

[38] Exhibit Q, Release from Light Duty Restriction.

12

the "door."[39] "They didn't want [him] in the field."[40] McMillian further testified that "Mayor Charles Scott would not let [him] work any overtime or put [him] on any call in the month of October 2023, because of the gallbladder surgery."[41] Accordingly, it is clear on this record that any alleged reduction in overtime was attributable to McMillian's light duty restrictions—not his EEOC charge.

In any event, the basis of McMillian's overtime retaliation claim is factually unsupported. The time sheets show that he did, in fact, earn overtime during October and November 2023: sixteen hours in October and thirteen hours in November.[42] McMillian also confirmed this in his deposition: "A. Okay. So you were earning overtime at the end of November? A. Yes, sir."[43]

Because McMillian's overtime theory lacks factual support, and because he cannot establish but-for causation, summary judgment should be granted in favor of the City on the overtime-based retaliation claims.

## II. Summary judgment should be granted on the FMLA interference claim.

McMillian asserts that the City interfered with his ability to take FMLA leave on November 27, 2023—the day that he was absent from work and traveling back from his vacation in Las Vegas.[44] This claim is a non-starter.

To establish a prima facie case of interference under the FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his

---

[39] Exhibit A, Excerpts of Barry McMillian Depo. Tr., at 55, 94.

[40] *Id.* at 93.

[41] *Id.*

[42] Exhibit R, October 2023 Time Sheets; Exhibit S, November 2023 Time Sheets.

[43] Exhibit A, Excerpts of Barry McMillian Depo. Tr., at 95.

[44] Am. Compl. [34] at 10.

PD.61740265.1

employer denied him the benefits to which he was entitled under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Even if the plaintiff succeeds in showing a prima facie case, he may not overcome a motion for summary judgment if the employer articulates a legitimate, non-discriminatory reason for the employment action at issue. *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016). To prevail, the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual. *Id.*

McMillian's interference claim falls flat at the first element of the prima face case. The FMLA provides an eligible employee with a total of twelve weeks of leave during any twelve-month period because of a serious health condition that renders the employee incapable of performing his job functions. 29 U.S.C. § 2612(a)(1)(D); *e.g.*, *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 579 (5th Cir. 2006). Relevant here, a serious medical condition is defined as an illness, injury, impairment, or physical condition that involves inpatient care or continuing treatment by a healthcare provider. *Mauder*, 446 F.3d at 579. These rules are consistent with the City's FMLA policy during the relevant period.[45]

The record establishes that McMillian was not entitled to FMLA leave on November 27, 2023. Although McMillian underwent gallbladder surgery in September 2023 and was temporarily placed on light duty, it is undisputed that he was released from those restrictions on November 8, 2023, nearly three weeks before the November 27 absence at issue.[46] What's more, McMillian admitted in his deposition that he missed work on November 27, 2023 because his "flight was delayed"—not because of any medical condition, sickness, or issue with his gallbladder.[47] As a result, McMillian has no evidence showing that he was incapacitated or

---

[45] Exhibit T, FMLA Policy & Sick Leave.

[46] Exhibit Q, Release from Light Duty Restriction.

[47] Exhibit A, Excerpts of Barry McMillian Depo. Tr., at 98–99.

14

otherwise unable to perform his job due to a qualifying "serious health condition" on November 27, 2023. That alone defeats his interference claim. *See, e.g.*, *Blues v. City of Hurst*, No. 4:06-CV-218, 2007 WL 2325201, at *1 (N.D. Tex. Aug. 13, 2007) (dismissing plaintiff's claim because plaintiff failed to specify the "serious health condition").

Even if McMillian could establish that he was an eligible employee, his prima facie case fails on the third, fourth, and fifth elements. That is, he cannot show that he was entitled to FMLA leave, that he provided proper notice, or that the City denied him any FMLA benefit. His purported request for leave is both incomplete and dated November 28, 2023, one day after his November 27 absence.[48] As Alderman Haynes testified during his deposition, "[i]f you are going to ask for a leave of absence, you would ask it before, not after."[49] This requirement is consistent with the City's FMLA and sick leave policies.[50] For these additional reasons, McMillian's FMLA interference claim must be dismissed. *See, e.g.*, *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) ("An employer may thus require that an employee hew to the employer's usual and customary procedures for requesting FMLA leave."); *see also Goff v. Singing River Health Sys.*, 6 F. Supp. 3d 704, 711 (S.D. Miss. 2014) (summary judgment is appropriate in FMLA case without evidence of unusual circumstances excusing employee's failure to timely call employer).

Lastly, even assuming McMillian could satisfy the elements of a prima facie case, he cannot show pretext. There is no evidence that the City denied leave for any improper or unlawful reason. It is undisputed that McMillian wasn't sick on November 27, 2023. Like the retaliation claims, the FMLA interference claim must be dismissed for lack of pretext.

---

[48] Exhibit U, Request for Leave; *see also* Exhibit A, Excerpts of Barry McMillian Depo. Tr., at 113.

[49] Exhibit J, Excerpts of Edward Haynes Depo. Tr., at 32.

[50] Exhibit T, FMLA Policy & Sick Leave.

15

## CONCLUSION

Defendant the City of Aberdeen's motion for summary judgment should be granted in its entirety, dismissing all claims.

This, the 8th day of May, 2026.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY: _/s/ Loden P. Walker_

G. Todd Butler, MB #102907
Loden P. Walker, MSB #105996
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Post Office Box 320159
Flowood, Mississippi 39232
Telephone: 601-352-2300
Telecopier: 601-360-9777
todd.butler@phelps.com
loden.walker@phelps.com

**ATTORNEYS FOR DEFENDANT CITY OF ABERDEEN**

16

PD.61740265.1

## **CERTIFICATE OF SERVICE**

I, Loden P. Walker, do hereby certify that I have this date electronically filed the above and foregoing *MEMORANDUM BRIEF* with the Clerk of the Court which gave notice to the following:

DeMoreo Reddick
Reddick Law Firm, PLLC
P.O. Box 465
Okolona, MS 38860
662-436-4641 (t)
reddicklawfirm@yahoo.com

***Attorney for Plaintiff Barry McMillian***

So certified, this the 8th day of May, 2026.

*/s/ Loden P. Walker*_____
Loden P. Walker

17

PD.61740265.1