IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BARRY MCMILLIAN                                          PLAINTIFF

VS.                           CIVIL ACTION NO.: 1:24-CV-199-SA-DAS

THE CITY OF ABERDEEN
AND JOHN DOES 1-20                                      DEFENDANTS

_____

## AMENDED COMPLAINT

_____

Now comes Plaintiff, **BARRY MCMILLIAN**, by and through his attorney,

DeMoreo Reddick, and files this his Amended Complaint against the Defendants, **THE**

**CITY OF ABERDEEN ("THE CITY") AND JOHN DOES 1-20** and, in support

thereof, would respectfully show unto the Court the following:

### PARTIES

1.     **PLAINTIFF, BARRY MCMILLIAN**, is a resident of Monroe County,

Mississippi.

2.     **DEFENDANT, THE CITY OF ABERDEEN,** is a governmental entity for

the State of Mississippi and can be served with process upon its City Clerk,

Melissa Moore, 125 W. Commerce St., Aberdeen, Mississippi 39730.

3.     **DEFENDANTS, JOHN DOES 1-20,** are defendants who are unknown at this

time, however, they will be supplemented if and when they are discovered.

### JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil

rights jurisdiction under 28 U.S.C. § 1343, for claims arising under the Civil

Exhibit A



Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981. Furthermore, the Plaintiff's claims in this lawsuit include federal causes of action, specifically federal constitutional claims and other federal claims, such as, his due process rights being violated, his Family Medical Leave Act ("FMLA") rights being violated, and that the City of Aberdeen also wrongfully terminated him because of his age, which is a violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 (ADEA). This Court has supplemental jurisdiction over Plaintiff's state law claims. This action is authorized by 42 U.S.C. § 1983.

## FACTS

5. This is an action to recover actual, compensatory, and punitive damages for discrimination in violation of the Civil Rights Act of 1964 and in violation of 42 U.S.C. § 1981. On approximately December 11, 2023, the Plaintiff filed EEOC charge number 423-2024-00292, attached hereto as Exhibit "A." The Plaintiff has received the right to sue letter with respect to charge number 423-2024-00292, attached hereto as Exhibit "B." The aforementioned EEOC charge contains the Plaintiff's claim that the City of Aberdeen terminated him in retaliation for him filing an EEOC charge against them. Also, the aforementioned EEOC charge number for when the City of Aberdeen retaliated against the Plaintiff for making that EEOC charge against them is 423-2022-00047.

6. The facts of the case are that the Plaintiff, Barry McMillian, was falsely accused of telling Triron Brown to clock him in at work on or around November 27, 2023, when he was not at work. On November 27, 2023, the Plaintiff was not in the state of Mississippi when he was clocked in for work because his flight was delayed because of mechanical issues. Also, on November 27, 2023, the Plaintiff tried to call his Supervisor, Marcus Collins, to tell him that he would not be in for work due to the plane for his scheduled flight having mechanical issues, however, he did not pick up the phone. Additionally, when this happened, he informed the next supervisor in command, whose name is Johnny McMillian, that he would not make it into work on the day in question due to his scheduled flight being moved due to mechanical issues. Also, when he got back in the state of Mississippi, Triron Brown, gave the Plaintiff four (4) hours of his sick leave to cover the time that he missed on November 27, 2023.

7. Also, his Supervisor, Marcus Collins, signed off on it and Charles Scott, who was the mayor for the City of Aberdeen at that time, erroneously denied him that request, in violation of the City of Aberdeen's policies. Mayor Charles Scott did this in retaliation of the Plaintiff's EEOC charge 423-2022-00047 and because he was retaliating against him for using or trying to use his FMLA leave in the past. Also, the Plaintiff did not know he was clocked into work until he got back because he told one of his supervisors on November 27, 2023, he would not be in on that day. This is when he discovered his supervisor, wrote him in for eight (8) hours of work, which he did not tell him

to do. Also, he was told by Mayor Charles Scott to come to the City of Aberdeen board meeting held on December 5, 2023, in regards to this matter, however, they (Mayor Charles and the City of Aberdeen Board of Aldermen/and or Alderwomen) did not let him give him his side of the story, which was done in retaliation of the Plaintiff filing an EEOC charge against the City of Aberdeen in the past and also because the Plaintiff requested FMLA leave in the past. However, they let his co-worker, Triron Brown give his side of the story, which is unfair. Also, Triron Brown was only suspended for three (3) days for his actions, however, the Plaintiff was terminated for something he had no knowledge of and for something he was not a part of. Therefore, it is obvious from the facts of this case that the Plaintiff was terminated by the City of Aberdeen in retaliation for him filing EEOC charge 423-2022-00047. Moreover, it is also obvious from the facts of this case that when the Plaintiff was terminated without getting a chance to respond to the allegations that the City of Aberdeen had retaliated against him for him filing EEOC charge 423-2022-00047 and for the Plaintiff requesting FMLA leave in the past.

8. It must be noted, to establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that "(1) he was engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and adverse employment action." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 & n.4 (5th Cir. 2023) (noting in the fourth footnote that the Title VII standard is

"substantially similar" to the ADEA standard and collecting cases). Here the Plaintiff reported to the EEOC that he was getting discriminated against because of his race, which is protected activity. Additionally, the Plaintiff was also denied overtime in October 2023 and November 2023 by Mayor Charles Scott once he made that EEOC charge, unlike his fellow co-workers. This information was confirmed by Marcus Collins, the Supervisor for the Water Department. Essentially, Marcus Collins, told the Plaintiff that Mayor Charles Scott did not want the Plaintiff to get any overtime hours. Exhibit "D", pg.4-11, shows that the Plaintiff was left off the list to get overtime. Furthermore, Exhibit D, pg. 8-9, shows that the Plaintiff worked overtime on November 2, 2023 and November 6, 2023, however, Marcus Collins, the Supervisor for the Water Department, told the Plaintiff that Mayor Charles Scott told him that the Plaintiff would not get paid for the overtime, therefore the Plaintiff did not get paid for the eight (8) hours of overtime that he worked on November 2, 2023 and November 6, 2023. Also, it is obvious that Mayor Charles Scott and the City wanted to deter the Plaintiff from filing future EEOC claims against them. Additionally, the Plaintiff was also fired in retaliation for filing EEOC charge 423-2022-00047. The City of Aberdeen Board of Aldermen are responsible for hiring and firing decisions and they were aware of the Plaintiff's protected activity and past grievances. Former Mayor Charles brought it to the floor for the City of Aberdeen Board of Alderman/and or Alderwomen to vote to terminate Barry McMillian, which was done in retaliation for the Plaintiff filing EEOC charge 423-2022-00047.

The City of Aberdeen Board of Alderman/and or Alderwomen who were aware of the Plaintiff's past grievances would have been Lady B. Garth, Nick Holiday, Carlyn Odom, Edward Haynes, Shea Cain, and Charles Scott, who was the mayor at the time. Moreover, all of those aforementioned people would have known about the Plaintiff's past grievances and his protected activity. Additionally, Edward Haymes, Shea Cain, Carlyn Odom voted to terminate the Plaintiff for filing EEOC charge 423-2022-00047. Moreover, all of those aforementioned people would have known about the Plaintiff's past grievances and his protected activity. The Plaintiff wants to make it clear that he was terminated due to retaliation for filing EEOC charge 423-2022-00047. Also, it is obvious in this instance the Plaintiff had an initial EEOC charge that was protected on March 7, 2022, however, the City of Aberdeen Board of Aldermen wanted to terminate the Plaintiff due to the previous charge that was filed against them. See Exhibit "A". It must be stated that the 2022 EEOC charge that the Plaintiff filed with the EEOC was still pending with the Department of Justice due to them investigating his EEOC charge, when the City of Aberdeen Bord of Aldermen retaliated against him by terminating him for conducting protected activity, as well as them retaliating against the Plaintiff by denying him his FMLA rights, which also led to his termination. The twenty (20)-month gap that the Defendant references does not stop the fact that the Defendant terminated the Plaintiff due to retaliation under Title VII. This also does not stop the fact that the City of Aberdeen also retaliated against him by denying the Plaintiff his FMLA rights, which also led to his

termination. Also, the City of Aberdeen wanted to terminate the Plaintiff for filing the 2022 EEOC charge because they wanted to stop him from being able to sue them for them in the future for them doing more wrongful conduct towards him, under Title VII, and to stop him from costing them future litigation expenses. Mr. McMillian was fired within approximately twenty (20) months after he executed a 2022 EEOC charge complaining of race discrimination, and making various other internal work complaints. Additionally, at the time of the Plaintiff's firing the Plaintiff's EEOC charge was still under investigation with the Department of Justice (DOJ). The Plaintiff did not get a right to sue letter from the DOJ for the 2022 EEOC charge until August 7, 2024, which was after the Plaintiff had been terminated on December 5, 2023. See Barry McMillian vs. The City of Aberdeen and et. al., Cause No.: 1:24-cv-00198-SA-DAS, (N.D. Miss.), Exhibit B, Document [1-2]. The Defendant will likely contend that the Plaintiff has no proof that the 2022 EEOC charge was related to his discharge. However, that argument will contravene the basic principle that questions regarding motivation and intent, "which often involve circumstantial evidence, and the drawing of "complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 482 (5th Cir. 1989). The anti-retaliation provision of Title VII (42 U.S.C. § 2000e-3(a), prohibits an employer from discriminating against an individual because he has "made a charge." "Importantly, a plaintiff need not demonstrate that the practice was actually unlawful for his opposition to be a

protected activity; rather, it is enough that the plaintiff reasonably believed the practice was unlawful." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021), as revised (Nov. 26, 2021) (emphasis in original). In this case, the Plaintiff has alleged that he believes that he was retaliated against for filing EEOC charge 423-2022-00047. Additionally, since the Plaintiff was terminated from working for the City of Aberdeen and his co-worker, Triron Brown, was not terminated, it obvious that the Plaintiff was retaliated against for filing EEOC charge 423-2022-00047. Also, this is a question of fact. "Close timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a prima facie case of retaliation." *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013). In the present case, the Plaintiff has demonstrated close timing between his filing a 2022 EEOC charge and his ultimate discharge (twenty (20) months). Additionally, the Plaintiff being terminated and his counter-part, Triron Brown, only being suspended for three days is inconsistent punishment for employees that are on the same level of possibly never receiving any written reprimands or receiving other discipline from their employment with the City of Aberdeen. There is no reasonable explanation, other than the fact that the City of Aberdeen retaliating against the Plaintiff, as to why the Plaintiff, Barry McMillian, who was falsely accused of stealing time was terminated, and Triron Brown was not terminated, even though Mr. Brown was allegedly involved in the matter. Title VII retaliation claims require proof of "but for"

causation. *Univ. of Texas Sw. Med.Ctr. v. Nassar*, 570 U.S. 338 (2013). However, but for causation does not mean that the Plaintiff must prove that the protected action (the 2022 EEOC charge) was the sole cause for the termination. *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013). In this case, a jury may reasonably find that McMillian's filing of the EEOC charge was a but for cause of his termination since it would cost the Defendant money to defend the charge and, ultimately, to defend a possible lawsuit. Mr. McMillian was fired approximately twenty (20) months after he executed the 2022 EEOC Charge. Additionally, a jury may infer that the 2022 EEOC charge was the reason for the discharge, especially if the jury does not believe the Defendant when it claims that it terminated the Plaintiff due to him stealing time. If a jury does not believe the Defendant is telling the truth, when it claims that they fired the Plaintiff due to him stealing time, then the filing of the 2022 EEOC charge, coupled with proof of pretext, is enough for a jury to determine that the filing of the 2022 EEOC charge was the likely but for cause of the Plaintiff's termination.... ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider party's dishonesty about a material fact as "affirmative evidence of guilt." *Reeves v. Sanderson*

*Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). Here, the Plaintiff's Complaint adequately pleads "that 'a majority of the board had [the requite unlawful] animus.'" *Harville v. City of Houston*, 935 F.3d 404, 413 (5th Cir. 2019) (citation omitted). The Plaintiff can prove Mayor Charles Scott, the mayor at the time, Edward Haynes, Carolyn Odom, and Shea Cain harbored retaliatory animus toward him because they all were the ones retaliated against him, or were the ones that either initiated his termination, and/or voted to terminate him because of the Electric Department Charge that he filed against the City of Aberdeen in 2022. For these reasons, Mr. McMillian has adequately plead or stated his retaliation claim under Title VII and § 1981.

9. Furthermore, it must also be noted at the time of the Plaintiff's termination the Plaintiff was injured and was on workman's compensation. Also, at the time of the Plaintiff's termination the City of Aberdeen did not have a Family Medical Leave Act ("FMLA") policy in place. At the time of the Plaintiff's firing the City of Aberdeen was supposed to inform the Plaintiff that he had FMLA time available, therefore, the Plaintiff had days available to cover any days that he missed. However, as was said earlier, the City of Aberdeen had no policy in place in reference to FMLA. In reference to the FMLA issue, the Plaintiff, filed a claim with the U.S. Department of Labor: Wage and Hour division. The U.S. Department of Labor: Wage and Hour division found in the Plaintiff's favor and gave him a "right to sue letter". See Exhibit "C". Exhibit "D" pg. 3: shows that the Plaintiff applied for sick leave for November 27, 2023, which was due to his gallbladder giving him problems,

however, Mayor Charles Scott, the mayor at the time, purposely denied that request and denied the Plaintiff his FMLA rights. It must be noted, to establish a prima facie case of interference under the FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). The employee also must show that the violation prejudiced him. *Acker v. Gen. Motors*, L.L.C., 853 F.3d 784, 788 (5th Cir. 2017). In reference to element: (1) and (2), the Plaintiff was an eligible employee because he worked for his employer, the City of Aberdeen, at least 12 months, at least 1,250 hours over the past 12 months, and he worked at a location where the City employs 50 or more employees within 75 miles. Therefore, the City were subject to FMLA requirements. Also, the Plaintiff was an eligible employee because he had gallbladder surgery and other procedures that caused him to have overnight stay in the hospital on September 21, 2023, which would have him fall under the FMLA requirements. Furthermore, at the time of the Plaintiff's termination, the Plaintiff had four more weeks of FMLA leave available. In reference to element (3) the Plaintiff was entitled to leave, as was stated earlier, the Plaintiff had surgery that required overnight stay and the Plaintiff had four more weeks of FMLA available; (4) he gave proper notice of his intention to take FMLA leave on September 20, 2023 and November 28, 2023; however,

the City of Aberdeen did not have an FMLA policy in place on September 20, 2023 or November 28, 2023. The Plaintiff gave Melissa Moore, the City Clerk of Aberdeen, proper notice of his request for leave under FMLA on September 20, 2023 and November 28, 2023. Additionally, the Plaintiff learned from his doctor, who informed him that he was entitled to FMLA, therefore, he gave the City Clerk, Melissa Moore, a letter from Dr. Terry Penson showing that he was entitled to FMLA leave, however, the City Clerk, Melissa Moore did not have any FMLA forms for the Plaintiff to fill out for FMLA leave because they, the City of Aberdeen, did not have a FMLA policy in place. See Exhibit D, pg. 1. Additionally, this was on September 20, 2023, See Exhibit "D", pg. 1. The Plaintiff also gave the City of Aberdeen notice of his intent to take leave under FMLA when he filled out a form to take sick leave and he gave it to the City of Aberdeen, See Exhibit "D", pg. 3. Also, his employer denied him the benefits to which he was entitled under the FMLA; it is obvious the Plaintiff was denied his requested leave under FMLA because the City of Aberdeen did not have a policy in place at the time he requested it and at the time of his termination. Exhibit "D", pg. 3, shows that Mayor Charles Scott erroneously and purposely denied the Plaintiff his sick leave. Mayor Charles Scott also retaliated against the Plaintiff when he denied the Plaintiff his FMLA rights. Also, around the time of the Plaintiff's termination, he had a gallbladder surgery, which required an overnight stay, he also had a workman's compensation case that was open at the time of his

termination, and the Plaintiff's workman's compensation case is still open as the to the date of this of this filing.

The Plaintiff had a "serious health condition" that he suffered from that required an overnight stay in the hospital. The Plaintiff's statement in his December 11, 2023 EEOC Charge stated that he "returned to full duty from FMLA on October 11, 2023, however, the Plaintiff had four more weeks of FMLA time available at the time of his termination. The Plaintiff had qualified for twelve weeks under FMLA, however, Melissa Moore, the City Clerk of Abeerdeen, and the City Aberdeen never informed him of his FMLA rights. Also, Melissa Moore informed the Plaintiff that she did not have any FMLA request forms for the Plaintiff to fill out and it must be stated this was due to the City of Aberdeen not having a FMLA policy in place. The City of Aberdeen had a duty to inform the Plaintiff that he had a right to take FMLA leave and that he had four weeks available, before he was falsely accused of stealing time and was terminated. Additionally, the Plaintiff's FMLA leave would have covered anytime that the City of Aberdeen said that he didn't have, in reference to the Plaintiff not having any sick days available to use at the time of his termination. Additionally, the Plaintiff was prejudiced by the City of Aberdeen and Mayor Charles Scott denial of his request for FMLA leave because when the Plaintiff requested his FMLA leave in September 2023, the City did not have FMLA policy in play so that made the Plaintiff have to use up all of sick days, which should not have been the case. Moreover, this made the Plaintiff have to ask his co-workers for their sick

days so he would not be terminated and so he could keep his salary. Also, Exhibit "D,", pg. 3 shows that the Plaintiff applied for sick leave for November 27, 2023, which was due to his gallbladder giving him problems, however, Mayor Charles Scott, the mayor at the time, purposely and without proper cause denied that request and, in turn, denied the Plaintiff his FMLA rights. This denial led to the adverse action of the Plaintiff being terminated, which should not have been the case. The Plaintiff was supposed to be able to use FMLA leave on November 27, 2023, and had the Plaintiff been allowed to use his FMLA leave as what was supposed to happen, the Plaintiff would not have been terminated.

10. In reference to FMLA retaliation, which the Plaintiff also is claiming, there are 3 elements. To state a prima facie claim for discrimination or retaliation under the FMLA, the plaintiff must allege that "(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Here, the Plaintiff requested his FMLA leave on September 20, 2023, because he was having surgery on his gallbladder which required an overnight stay, which is a protected activity. Here, the Plaintiff was denied overtime, unlike his colleagues, when he came back to work after he was allowed to be on full duty with no restrictions, which was on October 11, 2023. See Exhibit D, pg. 2-11. Also, Mayor

Charles Scott took the Plaintiff's name off the overtime list when he was able to go back to work. See Exhibit D, pg. 4-11. Also, after the Plaintiff came back to work with full duty and no restrictions, in October 2023, Marcus Collins, the Supervisor of the Water Department, stated to the Plaintiff that Mayor Charles Scott told him that he cannot let him (the Plaintiff) work any overtime. See Exhibit "D", pg. 2. Marcus Collins told the Plaintiff that he did put in the request for the Plaintiff to work overtime but that Mayor Charles Scoot denied it, unlike what happened to his colleagues. Furthermore, after this happened, the Plaintiff went to a City of Aberdeen meeting in October 2023, to let the City of Aberdeen Aldermen/and or Alderwomen know what adverse employee actions that Mayor Charles Scott was doing to him, however, they would not let him speak to them at the meeting. Additionally, on November 2, 2023 and November 6, 2023, the Plaintiff worked overtime and he did not get paid for his overtime hours because Marcus Collins told him that Mayor Charles Scott was not going to pay him for the overtime hours that he worked, which was at least eight (8) hours total. See Exhibit D, pg. 8-9. Additionally, Mayor Charles Scott took the Plaintiff off the overtime list for November 2023 as well. Also, Marcus Collins was the one that told the Plaintiff that Mayor Charles Scott informed him that he could not put him (the Plaintiff) on the overtime list for November 2023 as well. Additionally, this was unlike what was happening to the Plaintiff's colleagues who had not requested FMLA leave. Therefore, to the Plaintiff's knowledge, the Plaintiff is the only one that requested FMLA in the time frame that has been stated.

Also, Exhibit "D", pg. 3, shows that the Plaintiff applied for sick leave for November 27, 2023, which was due to his gallbladder giving him problems, however, Mayor Charles Scott, the mayor at the time, purposely denied that request and denied the Plaintiff his FMLA rights. See Exhibit "D", pg. 3. All of the adverse reactions began happing to the Plaintiff as soon as he came back from his FMLA leave due to his gallbladder surgery. Moreover, as was stated earlier, the Plaintiff was implicated in a matter with Triron Brown, however, the Plaintiff was terminated, and Triron Brown was only suspended for three (3) days, even though they were similarly situated to one another in prior discipline and other things. Additionally, Triron Brown did not request for FMLA leave, unlike the Plaintiff. Essentially, all of City of Aberdeen and Mayor Charles Scott adverse employment actions they did toward him happened in close proximity of him returning back to work at full duty, with no restrictions. Additionally, as was stated earlier, the Plaintiff was obviously treated less favorably than an employe who had not requested FMLA leave and the adverse actions that the City of Aberdeen and Mayor Charles Scott made were because of the Plaintiff's request for FMLA leave in the past. Essentially, Mayor Charles Scott and the City of Aberdeen Board of Aldermen/ and or Alderwomen wanted to deter the Plaintiff from requesting FMLA leave in the future. The City of Aberdeen Board of Alderman/and or Alderwomen who were aware of the Plaintiff's past grievances would have been Lady B. Garth, Nick Holiday, Carlyn Odom, Edward Haynes, Shea Cain, and Charles Scott, who was the mayor at the time. Moreover, all of those

aforementioned people would have known about the Plaintiff's past requests to take FMLA leave. Additionally, Edward Haymes, Shea Cain, Carlyn Odom voted to terminate the Plaintiff for attempting to take FMLA leave in the past. Mayor Charles Scott and the City of Aberdeen Bord of Aldermen/and or Alderwomen retaliated against the Plaintiff by terminating him for requesting FMLA leave in the past. Additionally, they (Mayor Charles Scott and the City) also retaliated against the Plaintiff by denying him his FMLA rights, which also led to his termination. Finally, the Plaintiff maintains that the City retaliated against him when he was "terminated without getting a chance to respond to Mayor Charles Scott's "allegations", during the December 5, 2023 board meeting.

11. Furthermore, the Plaintiff has suffered mental anxiety, emotional distress, and lost income as a result of the Defendants' actions. Moreover, Plaintiff is entitled to an order reinstating him to his employment.

## PRAYER FOR RELIEF

WHEREFORE, Premises Considered, Plaintiff respectfully demands the following relief from the Defendants:

    a.  Actual damages to the Plaintiff to be determined by a jury;

    b.  Compensatory damages to the Plaintiff to be determined by a jury;

    c.  Punitive damages to be determined by a jury;

    d.  Reinstatment;

    e.  Reasonable attorney's fee;

    f.  Court costs and Expenses; and

g. General relief as in duty bound they will ever so pray.

By:   <u>/s/ DeMoreo Reddick, Esq.</u>
DEMOREO REDDICK, ESQ.
COUNSEL FOR THE PLAINTIFF

OF COUNSEL:

REDDICK LAW FIRM, PLLC
DEMOREO REDDICK, ESQ.
MS BAR NO.: 103747
P.O. BOX 465
OKOLONA, MS 38860
PH: 662-436-4641
FAX: 662-256-3582