Johnny McMillian -- February 25, 2026

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BARRY MCMILLIAN            PLAINTIFF
VERSUS      CIVIL ACTION NO. 1:24-CV-199-SA-RP
THE CITY OF ABERDEEN
AND JOHN DOES 1-20        DEFENDANTS

***********************************************
DEPOSITION OF JOHNNY MCMILLIAN
***********************************************

APPEARANCES NOTED HEREIN

DATE: FEBRUARY 25, 2026
PLACE: ABERDEEN CITY HALL BOARDROOM
125 WEST COMMERCE STREET
ABERDEEN, MISSISSIPPI
TIME: 11:07 AM

REPORTED BY: DANA GORDON
CCR #1908

REPORTING BY DANA, LLC
Post Office Box 1362
Brandon, Mississippi 39043
(601)-506-3440
DanaDMoulder@gmail.com

## Page 2

APPEARANCES:

DEMOREO J. REDDICK, ESQ.
Reddick Law Firm, PLLC
Post Office Box 465
Okolona, Mississippi 38860-0465
reddicklawfirm@yahoo.com
(662)-436-4641

COUNSEL FOR PLAINTIFF

LODEN P. WALKER, ESQ.
CHANNING J. CURTIS, ESQ.
Phelps Dunbar, LLP
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
loden.walker@phelps.com
channing.curtis@phelps.com
(601)-352-2300
COUNSEL FOR DEFENDANTS

ALSO PRESENT: BARRY MCMILLIAN

## Page 3

### INDEX

Style and Appearances........................ 1
Index......................................... 3
Examination by Mr. Reddick.................. 4
Examination by Mr. Walker................... 12
Certificate of Court Reporter................ 21
Certificate of Deponent...................... 22
Errata Sheet................................. 23

### EXHIBITS

Exhibit 10: Written Statement................ 8

## Page 4

JOHNNY MCMILLIAN,
(AFTER HAVING BEEN FIRST DULY SWORN,
TESTIFIED AS FOLLOWS:)
EXAMINATION
BY MR. REDDICK:

Q. All right. Mr. McMillian, well, Johnny McMillian, my name is Attorney Moreo Reddick. I represent Mr. Barry McMillian in his case against the City of Aberdeen. I guess I am just going to start with some preliminary things.

Can you just state your name for the record?

A. Johnny McMillian.

Q. Okay. And where do you reside?

A. Huh?

Q. Where do you reside; where do you stay?

A. Aberdeen, Mississippi.

Q. Okay. Can you state your address for the record?

A. 516 South Meridian.

Q. Aberdeen, Mississippi?

A. Uh-huh.

Q. What's the ZIP code?

REPORTING BY DANA, LLC
DanaDMoulder@gmail.com

EXHIBIT MM

Johnny McMillian -- February 25, 2026

Page 5

A. 39730.

Q. All right. Are you on any medication that could affect your ability to give a deposition today? So that I know -- so just for the record, we have to say yes or no.

A. No. No.

Q. Okay. All right. And basically -- like I say, I don't plan on you being here long. But are you on any medication -- you said you are not on any medication that affects your ability to give a deposition. Okay.

So basically what it is, the court reporter is making a record. And so when I ask you a question, just give me a chance to ask the question. And then when you answer the question, I'll give you a chance to answer the question so we don't talk over each other.

A. All right.

Q. Kind of makes the court reporter have a hard time trying to transcribe the record and whatnot.

So just for the record, can you state your higher level of education with -- well, can you just state your highest level of education?

A. Twelfth.

Page 6

Q. So that's the 12th grade?

A. Uh-huh.

Q. Okay. And are you currently employed or unemployed?

A. I'm employed.

Q. Okay. Where do you work?

A. MHR [sic], Monroe Regional Hospital.

Q. Okay. And in reference to your family, I assume they're the McMillians, correct?

A. Yeah.

Q. Okay. Is that your only family?

A. Yeah.

Q. Okay. In Monroe County, that's --

A. I got a son and a wife.

Q. Okay. And what's their name?

A. Sharon.

Q. Can you spell that?

A. S-H-A-R-O-N.

Q. McMillian?

A. Uh-huh.

Q. And what is your child's name?

A. Javian, J-A-V-I-A-N.

Q. All right. And so, I guess, like I said, I'm not here to trick you or anything.

Page 7

I'm just here to get information and whatnot.

I guess, just for the record, my client called you on November 27th of 2023. Is that accurate?

A. Yes, sir.

Q. Okay. Do you know why my client -- and when I mean my client, I mean Mr. Barry McMillian -- do you know why he called you?

A. He called me and told me he was gonna -- he wasn't going to be at work that day.

Q. Okay. And do you know why?

A. He -- I think he was out of town.

Q. Okay. All right. And --

A. Yeah, it was out of town.

Q. Okay. And that was for November 27, 2023?

A. Yeah.

Q. Okay. And that is the day that he called you?

A. Uh-huh.

Q. All right.

MR. REDDICK: I want to make this, I guess, what, 10?

THE COURT REPORTER: 10.

Page 8

MR. REDDICK: All right. That's going to be Exhibit 10.

(EXHIBIT NO. 10 WAS MARKED.)

BY MR. REDDICK:

Q. All right. Mr. McMillian, I am just showing you -- and I guess need to state for the record, Mr. Johnny McMillian, I am showing you Exhibit 10.

Can you just read over that and then just tell me what that is?

A. "I, Johnny McMillian, was notified by Barry McMillian that he was taking off the 27th of November. He notified me because I was active supervisor for the week."

Q. Okay. All right. Who wrote that statement? I guess, did you write that statement?

A. Yeah.

Q. For the record, you are saying yes?

A. Uh-huh.

Q. Okay. Who -- I guess --

A. Say that again.

Q. No, I'm just saying, for the record, that you did write that statement?

A. Yeah.

2 (Pages 5 to 8)

Johnny McMillian -- February 25, 2026

## Page 9

Q. Okay. So that's a yes?

A. Uh-huh.

Q. Okay. All right. And so who did you send this to?

A. Marcus.

Q. Okay. And who is Marcus?

A. He's the supervisor.

Q. Okay. And so why did you send -- and so Marcus, are you referring to Marcus Collins?

A. Uh-huh.

Q. All right. And why did you send it to Marcus Collins?

A. Because he was off that week.

Q. Okay. And was he off the previous week or the week of the 27th with the --

A. The same week Barry was off.

Q. Okay. So that was coming off of Thanksgiving holiday?

A. I don't recall now, but he was off.

Q. Okay. All right. That's fair. If you don't know something, you just say that you don't know. Just trying to get --

A. You know, I'm retired. I don't remember like I used to.

Q. I got you.

## Page 10

And so do you know, what's the chain of command in reference to the people when -- well, when an employee has to miss work, who do they call first?

A. They call their supervisor.

Q. And so at the time, that would have been Mr. Marcus Collins?

A. Uh-huh.

Q. Do you know if Barry McMillian did indeed call Mr. Marcus Collins?

A. Yeah, he called him.

Q. And how do you know that?

A. Because I had the text in my phone. I changed phones.

Q. Uh-huh.

A. Uh-huh.

Q. And so, what, you confirmed that with Mr. Collins?

A. No. He had asked me about was he at work that day and I told him, "No, he wasn't at work that day."

Q. Okay. And did you tell him the day that you received that phone call from Barry that he wasn't at work that day?

A. Yeah.

## Page 11

Q. Okay. And you did that via text message or phone call to Mr. Collins?

A. Face to face.

Q. Okay. Face-to-face conversation. So it was never in writing or anything?

A. Uh-uh.

Q. So that is a no?

A. Yeah. No. No. No. No. Yeah.

Q. Okay.

A. I'm sorry.

Q. No. No. You're good. No, take your time. Okay. But you are just saying it was a face-to-face conversation. You never gave him a piece of paper where you were saying that Mr. McMillian --

A. Uh-uh.

Q. -- Mr. Barry McMillian wasn't going to be at work that day?

A. No, 'cause both of them was out of town, I think.

Q. Okay. All right. Is there anything else that you know about this matter or anything that you want to state for the record?

## Page 12

A. Uh-uh.

Q. Okay. So that's a no?

A. Yeah. No.

MR. REDDICK: Okay. That's the only questions I have for Mr. McMillian -- Mr. Johnny McMillian.

EXAMINATION

BY MR. WALKER:

Q. Johnny --

A. Hey, how are you?

Q. -- Johnny, I got a couple of questions. I'll introduce myself first. My name is Loden Walker. I've got a weird first name, but I'm the attorney that represents the City in this case that was filed by your brother, Barry.

A. Uh-huh.

Q. Could you just describe your relationship to me with your brother; how would you describe your relationship?

A. Good.

Q. Can you elaborate more than that?

A. Me and him get along good and we be together with family parties and stuff.

Q. How often would you say you talk to

3 (Pages 9 to 12)

REPORTING BY DANA, LLC
DanaDMoulder@gmail.com

Johnny McMillian -- February 25, 2026

## Page 13

him?

A. I talk to him about once or twice a week.

Q. Did you talk to him about this deposition?

A. No.

Q. No.

A. Uh-uh.

Q. Have you talked to him about this lawsuit?

A. No. I don't even know nothing about no lawsuit.

Q. So you didn't know before today that Barry sued the City?

A. Until you called me Wednesday.

Q. Okay.

A. Was it Tuesday or Wednesday? I'm sorry.

Q. I think it was Monday.

A. Monday.

Q. Around that. It could have been Tuesday. It all blurs together.

A. Yeah. No.

Q. I won't hold you to any dates, though.

## Page 14

I think you mentioned in your testimony that you sent -- I think it's Exhibit 10. It's in front of you, that written statement to Marcus.

A. Uh-huh.

Q. How did you send it to him? Like, was it an e-mail?

A. No, face to face. I talked to him face to face because he was out of town -- Marcus was out of town. He called me and said he wasn't going to be at work.

Q. Okay. But this statement right here, you said you typed this statement --

A. Yes.

Q. -- Exhibit 10?

A. Uh-huh.

Q. Did you give this statement to Marcus?

A. No. Let me -- I don't -- I don't recall giving it to him but I might have, you know.

Q. Who do you recall giving this statement to?

A. Marcus.

Q. So you did give this to Marcus?

## Page 15

A. I don't know. I don't recall giving it to him, but I gave him something. I don't know.

Q. Okay. When would you have typed this statement?

A. On the 27th.

Q. Okay. But Marcus wasn't at work on the 27th; is that right?

A. Yeah. Uh-huh.

Q. Was he --

A. He was out in Texas but he came back that Monday.

Q. In December? I think -- I'll represent to you that the 27th of November was a Monday.

A. Uh-huh.

Q. I think December 1st was a Friday.

A. Uh-huh.

Q. So the following Monday would have been, like, the 4th -- the 3rd, the 4th.

A. Yeah.

Q. So you think you would have given it to Marcus on, like, December 4th?

A. Okay. Let me recall now. That been a long time, the 27th.

## Page 16

Q. I understand. I'm not testing your memory here.

A. Yeah. Both of them was out of town. Barry called me on the 27th and Marcus was out of town too.

Q. Right.

A. Let me remember, all right?

Q. I'm with you.

A. And that Monday was the 28th -- Monday was the 27th, 28th.

Q. 28th was a Tuesday.

A. Uh-huh. Let me recall, now. Give me a minute.

Q. Take your time.

A. Yeah. But I -- like I say, I forgot when I gave it to him. I don't know whether it was on the 4th or what.

Q. Okay. But I guess you didn't give it to him the week of the 27th if he wasn't at work.

A. No, I didn't give it to him --

Q. Okay.

A. -- you know, the following week.

Q. But you gave it to him the following week?

4 (Pages 13 to 16)

Johnny McMillian -- February 25, 2026

Page 17

A. Uh-huh.

Q. Okay. So did you just type it up? So were you at the City and you typed it up and printed it out?

A. Yeah.

Q. Okay. And then you gave it to him when he came into work?

A. Yeah.

Q. Okay. And then I may have misheard you and so I'm sorry if I have, but I think you said that you knew that Barry called Marcus on November 27th; is that right?

A. That same day, both of them was out of town.

Q. Right.

A. Marcus was in Texas; Barry in California. And he said -- Barry called me and told me he was -- he was -- wasn't gonna be at -- he called Marcus and he wasn't gonna be at work.

Q. Okay. So Barry told you that he called Marcus?

A. Uh-huh. He -- I had -- he text me too.

Q. Barry did?

Page 18

A. Uh-huh.

Q. Okay. Has Marcus ever told you that Barry called him?

A. No.

Q. Okay. When -- if you can recall, on that day, on the 27th, when did Barry call you?

A. He called me that morning.

Q. Okay. Do you remember roughly what time?

A. Uh-uh.

Q. Okay. Would it have been close to lunch?

A. It was before lunch, way before lunch.

Q. Like close to breakfast?

A. Yeah.

Q. Okay. Do you remember when you were supposed to start that day, what time?

A. Seven o'clock.

Q. Okay. What about Barry?

A. Seven o'clock.

Q. Okay. Do y'all usually start at 7 AM?

A. I go in at six. They go in at seven.

Q. Your understanding is Barry -- you

Page 19

usually saw Barry there by seven?

A. Yeah.

Q. Okay.

A. Yeah.

Q. Okay. Did you know Barry was going to be out of town that day before that Monday?

A. Yeah.

Q. Yeah. When did he tell you he was going to be out of town?

A. Before he left.

Q. Okay. When did he leave?

A. I think that Thursday or Friday.

Q. Before?

A. Uh-huh.

Q. Okay. But then Barry just waited until Monday to call Marcus, to your understanding?

A. Yeah. Yeah, but, like I said, both of them was out of town.

Q. Okay.

A. Uh-huh.

MR. WALKER: Okay. All right. I don't have any further questions.

THE WITNESS: All right.

MR. WALKER: Thank you.

Page 20

THE WITNESS: All right. Y'all got me over here. Got to go back to work now.

(DEPOSITION CONCLUDED AT 11:18 AM.)

5 (Pages 17 to 20)

REPORTING BY DANA, LLC
DanaDMoulder@gmail.com

Johnny McMillian -- February 25, 2026

Page 21

CERTIFICATE OF COURT REPORTER

I, Dana Gordon, Court Reporter and Notary Public in and for the County of Rankin, State of Mississippi, hereby certify that the foregoing pages contain a true and correct transcript of the testimony of the witness, as taken by me in the aforementioned matter at the time and place heretofore stated, as taken by stenotype and later reduced to typewritten form under my supervision to the best of my skill and ability by means of computer-aided transcription.

I further certify that under the authority vested in me by the State of Mississippi that the witness was placed under oath by me to truthfully answer all questions in this matter.

I further certify that I have no interest, monetary or otherwise, in the final outcome of this matter.

I further certify that this transcript is the work product of this court reporting agency and any unauthorized reproduction and/or transfer of it will be in violation.

_____
DANA GORDON, #1908
My Commission Expires: June 12, 2028

Page 22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BARRY MCMILLIAN                    PLAINTIFF

VERSUS          CIVIL ACTION NO. 1:24-CV-199-SA-RP

THE CITY OF ABERDEEN
AND JOHN DOES 1-20                 DEFENDANTS

CERTIFICATE OF DEPONENT

I, JOHNNY MCMILLIAN, certify that I have examined the foregoing pages as to the correctness thereof, and that after reading said pages, I find them to contain a full and true transcript of the testimony as given by me on FEBRUARY 25, 2026, except for the list of corrections, if any, attached on a separate sheet with the page number, line number, and desired correction/change.
Witness my hand, this the _____ day of _____, ____.

_____
JOHNNY MCMILLIAN

CERTIFICATE
Subscribed and sworn to before me, this the ____ day of _____, ____.

My Commission Expires:    _____
_____    Notary Public

Page 23

ERRATA SHEET

PAGE     LINE     CORRECTION (IF ANY)

6 (Pages 21 to 23)

REPORTING BY DANA, LLC
DanaDMoulder@gmail.com