**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**BARRY MCMILLIAN**                                                           **PLAINTIFF**

**vs.**                                      **CIVIL ACTION NO.: 1:24-CV-199-GHD-RP**

**CITY OF ABERDEEN, MISSISSIPPI**
**AND JOHN DOES 1-20**                                             **DEFENDANTS**

### REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant the City of Aberdeen submits this Reply in Support of Motion for Summary Judgment, as follows:

Nothing in Plaintiff Barry McMillian's amended oppositional response defeats Defendant's summary judgment motion. In employment cases like this one, the "focus is on the final decisionmaker." *See, e.g., Dumas v. Union Pacific R.R. Co.*, 294 F. App'x 822, 826 (5th Cir. 2008). Yet McMillian admittedly has no evidence that the City's Board of Aldermen acted with retaliatory motives. That should be the end of this case. Additionally, to the extent McMillian brings a cat's paw theory of liability, it is procedurally barred and unsupported on this record. Even if it isn't barred, McMillian cannot establish causation, nor can he rebut the City's legitimate, non-retaliatory reason for his termination. It is likewise dispositive that McMillian has not shown that he was entitled to FMLA leave on November 27, 2023. Summary judgment should be granted on all claims.

### REASONS TO GRANT SUMMARY JUDGMENT

McMillian asserts retaliation claims under Title VII, § 1981, and the FMLA, along with a separate claim for FMLA interference. Each claim must be dismissed.

PD.62250938.1

I.      **McMillian cannot establish a retaliation claim under Title VII, § 1981, or FMLA.**

Title VII, § 1981, and FMLA prohibit an employer from, among other things, firing an employee with unlawful retaliatory animus.[1]  A plaintiff can prove a claim of retaliation "either by direct or circumstantial evidence."  *Ayorinde v. Team Indus. Servs Inc.*, 121 F.4th 500, 507 (5th Cir. 2024) (citation omitted).  McMillian asserts both in his Amended Response.  Each are discussed separately.  None defeat summary judgment.

**No Direct Evidence of Retaliation.**  McMillian asserts that he has "direct evidence" of retaliation under Title VII and § 1981.  Am. Resp. [126] at 8–13.  To support this assertion, he points to three things: (1) Alderwoman Carolyn Odom's deposition testimony (which he labels as a "smoking-gun"); (2) the Board of Aldermen's awareness of his twenty-one-month-old EEOC charge at the time of termination; and (3) an alleged "retaliatory campaign" from the Mayor preceding his termination.  *Id.*  None come close to qualifying as direct evidence of retaliation.

"[D]irect evidence is rare," and this is not one of those rare cases.  *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (citation omitted).  The Fifth Circuit defines "direct evidence" as "evidence which, if believed, proves the fact without inference or presumption."  *Id.* (citation omitted).  It must show "on its face that an improper criterion served as a basis . . . for the adverse employment action."  *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (citation omitted).  This means that if the evidence requires any inferential step, it is circumstantial.  *Id.*

---

[1] 42 U.S.C. § 2000e-3(a); *e.g.*, *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 327 (5th Cir. 2023) ("[FMLA retaliation claims] are analyzed under the same framework as Title VII retaliation claims."); *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) ("We consider 'racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981[] under the same rubric of analysis.'" (citation omitted)).

PD.62250938.1

McMillian's three categories of evidence require this Court to draw inferences about the City's retaliatory motive. The Board of Aldermen's mere knowledge of McMillian's EEOC charge "suggests, by itself, no causality at all" because it was filed on March 7, 2022, i.e., twenty-one months before his December 5, 2023 termination. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that adverse action taken twenty months after the protected activity suggest no causation). The Mayor's alleged retaliatory campaign is likewise paradigmatic circumstantial evidence.[2]

The same is true for Odom's deposition testimony. It too requires this Court to draw inferences about the Board's motive in the termination decision. Indeed, when read in full, Odom's testimony unequivocally forecloses McMillian's assertion of direct evidence.

At no point did Odom testify that McMillian's EEOC charge motivated her vote in favor of termination. To the contrary, she repeatedly and consistently explained that she voted to terminate McMillian because she believed he was "was embezzling time from the city."[3] She further confirmed that the EEOC charge "wasn't brought up or even discussed" during the Board meeting, which instead focused exclusively on McMillian's timekeeping misconduct:

> Q. Would you agree with [Alderman Cain] that the 2022 charge wasn't brought up or even discussed during the [Board] meeting?

---

[2] *See, e.g.*, *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 474 (5th Cir. 2015) (finding direct evidence of discrimination when general manager, who was the final decisionmaker, did not allow "dark skin black person[s] [to] handle any money at" the casino and that he "thought [the employee] was too black to do various tasks"); *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994) (finding direct evidence of discrimination when the supervisor, who was the final decisionmaker, told a demoted employee that she "wouldn't be worth as much as the men would be to the bank" and "she would be paid less because she was a woman.").

[3] McMillian's Exhibit D [114-4], Carolyn Odom's Depo. Tr., at 9 ("Well, I felt like that he was embezzling time from the City."), 32 ("I wouldn't have [voted in favor of termination of] Mr. McMillian if I didn't [know the definition of embezzlement]."), 52 (re-confirming she voted in favor of termination because she believed McMillian embezzled time from the City), 53 (same), 54 (same).

PD.62250938.1

A.  That's exactly right, because it was – all we were doing in that meeting was [talking] about him not being at work and still had been clocked in for him.

Q.  The embezzling time?

A.  Right, that was the embezzlement.[4]

Faced with this testimony, McMillian attempts to rely on isolated responses to ambiguous question—questions Odom expressly acknowledged during the deposition "confused" her—about the City's handbook and McMillian's prior acts.[5]  But cherry-picked and confused testimony does not transform a record devoid of explicit retaliatory motive into direct evidence. At most, Odom acknowledged awareness of his prior disputes, including the EEOC charge.  That is not direct evidence of causation.

Specifically, the Court would have to disregard Odom's express testimony that she voted to terminate McMillian for "embezzling time" and instead convert her mere awareness of McMillian's prior EEOC charge into proof that *the filing of the charge itself* actually motivated her vote.  This Court would also have to assume that a factor "not brought up or even discussed" nonetheless drove the Board's decision as a whole.  The Court would then have to go further still and impute that unstated motive to a majority of the Board, despite no evidence regarding the other members' retaliatory intent, and infer that the Board's stated focus on timekeeping misconduct was pretextual.

Neither Odom nor Scott was a final decisionmaker.  The undisputed final decisionmaker was the City's Board of Aldermen as a collective body.  Am. Compl. [34] at 5 ("The City of Aberdeen Board of Aldermen are responsible for hiring and firing decisions[.]"); MISS. CODE § 21-3-5; *e.g.*, *Sockwell v. Town of Calhoun City*, 2019 WL 3558173, *2 (N.D. Miss. 2019) ("In

---

[4] *Id.* at 54.

[5] *Id.* at 52.

4

Mississippi, state law is clear that it is the municipal Board of Aldermen, and not the Police Chief, that is the final decisionmaker when it comes to the employment of patrol officers."). Notably, in this context, the Fifth Circuit requires proof that "a <u>majority</u> of the board had the requite animus." *Harville v. City of Houston*, 945 F.3d 870, 878 (5th Cir. 2019) (cleaned up) (emphasis added); *see also Atkins v. McGuire*, No. 3:21-CV-810-CWR-FKB, 2023 WL 4503515, at \*6 (S.D. Miss. 2023) (A plaintiff must plaintiff "demonstrate that a majority of the body had [unlawful] animus."). That is a demanding standard because "collective decision-making is less susceptible" to unlawful motive. *Wu v. Miss. State Univ.*, 626 F. App'x 535, 538 (5th Cir. 2015).

Odom's testimony does nothing to satisfy that burden. Even if it could be construed as reflecting her individual views (it cannot), it says nothing about the motives of the remaining board members.[6] *See, e.g.*, *Clark*, 952 F.3d at 581 ("[T]he evidence suggests that the speaker (McCoy) was not the ultimate decisionmaker regarding termination. And Clark admits as much in his brief—undercutting his own argument. . . . <u>So McCoy's statement can't be direct evidence of disability discrimination</u>[.]" (emphasis added)). And Fifth Circuit precedent is clear: evidence of bias by a single board member does not constitute direct evidence of a board's retaliatory action. *Harville*, 945 F.3d at 878 ("Harville does not present evidence that any racial animus by Alderwoman Jones motivated the other members of the Board."); *Atkins*, 2023 WL 4503515, at \*6.

---

[6] *E.g.*, Exhibit J [110-10], Excerpts of Edward Haynes Depo. Tr., at 42 ("We didn't terminate him because of the EEOC. It was due to stealing time."); Exhibit O [110-15], Excerpts of Shea Cain Depo. Tr., at 124 ("Q. [D]o you believe the City of Aberdeen retaliated against Mr. McMillian by terminating him for him filing this charge right here, this [March 7, 2022] EEOC charge 423-2022-00047[?] A. Oh no, absolutely not.").

PD.62250938.1

Because McMillian offers no direct evidence—on its face and without inference—that shows his twenty-one month-old filing of an EEOC charge motivated the Board's termination decision, his direct evidence argument must be rejected.

**No Circumstantial Evidence of Retaliation/No Cat's Paw.** In an attempt to circumvent his inability to demonstrate Board animus, McMillian contends that summary judgment should be denied under a cat's paw theory of liability. Am. Resp. [126] at 13–18. To support this contention, McMillian claims that only Mayor Scott investigated McMillian's timekeeping misconduct and that Scott, in turn, presented his findings to the Board. *Id.* This argument is procedurally barred, mischaracterizes the record, and should nonetheless be rejected.

Only McMillian's Title VII and FMLA retaliation claims can proceed under a cat's paw theory of liability. *Way v. City of Missouri City*, 133 F.4th 509, 525 n.25 (5th Cir. 2025). Section 1981 claims flow through Section 1983, and cat's paw isn't a viable theory under Section 1983. *Jones v. City of Hutto*, 154 F.4th 332, 340 (5th Cir. 2025) ("Jones does not cite any case in which the Fifth Circuit applied cat's paw to a *Monell* claim and we are similarly unaware of any such authority. In fact, our cases impliedly reject the theory in *Monell* contexts." (citations omitted)); *accord Naumovski v. Norris*, 934 F.3d 200, 222 (2d Cir. 2019) ("Section 1983 claims for discrimination in public employment cannot be based on a respondeat superior or 'cat's paw' theory to establish a defendant's liability.").

In any event, McMillian is procedurally barred from invoking a cat's paw theory at this stage of the game. Cat's paw is an "exception" to the ordinary rule that courts must focus on final decisionmaker motives. *See Banks v. Claiborne Cnty. Sch. Dist.*, No. 5:20-CV-176-DCB-MTP, 2021 WL 7080980, at *3 (S.D. Miss. Dec. 29, 2021). Yet nothing in the Amended Complaint suggests that McMillian is relying on a liability exception as opposed to the general

6

rule. Am. Compl. [34] (omitting any mention of cat's paw liability); *see id.* at 6 ("[T]he City of Aberdeen Board of Aldermen wanted to terminate the Plaintiff due to the previous charge that was filed against them.").

This is not a case like *Johnson v. Shelby*, 574 U.S. 10 (2014), where the City is asking that a cause of action be dismissed for failure to state a claim. The City instead is asking that McMillian not be permitted to invoke a new liability theory in support of a claim that <u>was</u> stated. This is a distinction the Fifth Circuit and other courts have continued to recognize post-*Johnson*. *Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789–90 (5th Cir. 2021) ("Our precedent precludes a plaintiff from . . . reframing a previously presented [claim] in response to a motion for summary judgment."); *Polycon Indus., Inc. v. R&B Plastics Mach., LLC*, No. 2:19-CV-485-PPS-JPK, 2022 WL 426582, at *6 (N.D. Ill. Feb. 10, 2022) (holding that the plaintiff improperly altered its factual theory on summary judgment by focusing on allegedly fraudulent statements that the complaint "doesn't say a whiff about").

Notwithstanding, and to the extent cat's paw isn't procedurally barred, "to establish causation under a cat's paw theory," an employee must show (1) that his supervisor, "motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of" his termination." *Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015); *see also Harmon v. Collier*, 158 F.4th 595, 617 (5th Cir. 2025). "When discussing the second prong, the Fifth Circuit has noted that 'an investigation that resulted in an adverse action for reasons unrelated to the supervisor's retaliatory statements' could be a superseding cause, breaking the causal chain." *Brown v. Wal-Mart Stores East, L.P.*, No. 1:18-CV-243-LG-RHW, 2019 WL 13438467, at *4 (S.D. Miss. Sept. 12, 2019) (quoting *Zamora*, 798 F.3d at 334).

PD.62250938.1

Even assuming McMillian could show Mayor Scott was "motivated by retaliatory animus" (he hasn't), McMillian cannot establish causation or pretext. Mayor Scott isn't the only person who spoke to the Board.[7] *See, e.g.*, *Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 318 (5th Cir. 2011) (For there to be cat's paw liability, a biased recommendation must be accepted "without evaluation."). It is undisputed that Triron Brown personally informed the Board that he clocked McMillian in and out on the day in question upon McMillian's request:

Q. Was Mr. Brown also involved in that matter?

A. Mr. Brown was accused of clocking Mr. McMillian in when Mr. McMillian was not here.

Q. Okay.

**A. And Mr. Brown stated that he was told—he was asked to do so by Mr. McMillian.**

**Q. Okay. And did you hear that with—I guess, verbally, from Mr. Brown?**

**A. I did.**

**Q. Okay. And when did he tell you this?**

**A. During that board meeting.**

Q. The board meeting on December 5, 2023?

A. Uh-huh.

Exhibit J [110-10], Excerpts of Edward Haynes Depo Tr., at 9; *see also* Exhibit O, Excerpts of Shea Cain Depo Tr., at 31 ("I will tell you that I made an informed decision to terminate Mr. McMillian based on what I was told in this boardroom by the people that reported it and by the city attorney, and we collectively as a board decided to terminate Mr. McMillian that night.");

---

[7] *E.g.*, McMillian's Exhibit F [114-6], Melissa Moore Depo. Tr., at 21 ("Q. Have you ever seen Mr. Mayor Scott make any type of negative comments about Mr. McMillian? A. No, sir.").

McMillian's Exhibit F [114-6], Melissa Moore Depo. Tr., at 41–42 (City Clerk Melissa Moore recounted that Brown "shared with the board that he had clocked Mr. McMillian in.").[8]

And because the City has carried its burden of articulating a legitimate, non-retaliatory reasons for its termination decision, McMillian was required to establish "pretext . . . 'by showing that a discriminatory motive more likely motivated her employer's decision.'" *Saketoo v. Admin. Of Tulane Educ. Fund*, 31 F.4th 990, 1002 (5th Cir. 2002) (citation omitted). Yet McMillian didn't depose Mayor Scott, and McMillian admitted that he lacks personal knowledge of why the board members voted to terminate him.[9] Indeed, McMillian's arguments turn primarily on mere speculation and mischaracterization of evidence. *E.g.*, *Moon v. Olivarez*, 26 F.4th 220, 226 (5th Cir. 2022) (A party "cannot defeat summary judgment with speculation, improbable inferences, or unsubstantiated assertions." (quoted case omitted)). The absence of proof is fatal to his claims.

Accordingly, because McMillian has no evidence that Mayor Scott acted with retaliatory animus, cannot establish causation, and fails to rebut the City's legitimate, non-retaliatory reason for his termination, his Title VII and FMLA retaliation claims must be dismissed. *See See, e.g.*, *Awe v. Harris Health Sys.*, 163 F.4th 969, 976 (5th Cir. 2026) (Elrod, C.J., concurring) ("But because Awe's employer was able to provide a non-retaliatory reason for its action that Awe failed to rebut, he loses. Consequently, although Awe has raised genuine disputes of fact relevant to whether retaliation occurred, he is left without a chance to prove his case before a jury.");

---

[8] As stated in the opening brief, the board members testified that FMLA did not factor into their decision, and Alderman Cain further testified that he was not even aware of it. Exhibit J [110-10], Excerpts of Edward Haynes Depo. Tr., at 63–64 ("None whatsoever. My decision was not based off none of that."); Exhibit P [110-16], Excerpts of Carolyn Odom Depo. Tr., at 51 ("Q. Do you think the City of Aberdeen retaliated against him for trying to get his FMLA benefits to cover the November 27, 2023 [absence]? A. No. Q. Okay. What about yourself? Did you – A. No."); Exhibit O [110-15], Excerpts of Shea Cain Depo. Tr., at 126.

[9] Exhibit A [110-1], Excerpts of Barry McMillian Depo. Tr., at 87–89.

PD.62250938.1

*Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005) ("[A] Title VII employment discrimination or retaliation plaintiff's subjective belief [is] an insufficient defense to a summary judgment motion[.]").

### II. McMillian's FMLA interference claim is a non-starter.

To establish a prima facie case of FMLA interference, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Even if the plaintiff succeeds in showing a prima facie case, he may not overcome a motion for summary judgment if the employer articulates a legitimate, non-discriminatory reason for the employment action at issue. *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016). To prevail, the plaintiff must raise an issue of material fact that the employer's proffered reason was pretextual. *Id.*

McMillian's FMLA interference claim fails for a simple and unrebutted reason: he has no evidence showing that he was entitled FMLA leave because he was not incapacitated or otherwise unable to perform his job due to a qualifying "serious health condition" on November 27, 2023. *Ford-Evans v. United Space Alliance LLC*, 329 F. App'x 519, 526 (5th Cir. 2009) ("The plaintiff had the burden at all times to show h[is] statutory entitlement to FMLA leave and to present evidence of a 'serious medical condition' so as to establish a prima facie case for a FMLA interference claim." (collecting cases)).

McMillian's own Amended Complaint and deposition testimony confirm that he missed work on November 27, 2023 because his "flight was delayed" returning home from Las Vegas—not because of any medical condition, sickness, or issue with his gallbladder. Exhibit A [110-1],

10

Excerpts of Barry McMillain Depo. Tr., at 99 ("A. But it wasn't because your gallbladder? A. My flight was delayed, and I was just going to use one of FMLAs days up."); *id.* ("Q. So you're marking it as sick leave, but you weren't sick, essentially. A. Yes, sir."); *see also* Am. Compl. [34] at 3 (¶ 6) ("On November 27, 2023, the Plaintiff was not in the state of Mississippi when he was clocked in for work because his flight was delayed due because of mechanical issues.").

For this reason, alone, this claim must be dismissed. *See, e.g.*, *Ford-Evans*, 329 F. App'x at 528 (affirming district court's dismissal of FMLA interference claim because "there is no evidence in the record that her health condition . . . is a 'serious health condition' that rendered her incapacitated and unable to work"); *Sosa v. Coastal Corp.*, 55 F. App'x 716, 2002 WL 31933068, at *3 (5th Cir. Dec. 16, 2002) ("Sosa's statement that she could not work because she was in pain is incompetent summary judgment evidence because it was unsubstantiated and conclusory"); *Hood v. City of Cleveland*, No. 4:10-CV-9-SA-DAS, 2011 WL 533676, at *5 (N.D. Miss. Feb. 15, 2011) (dismissing FMLA interference claim because the plaintiff "failed to offer evidence that her bronchitis was a 'serious health condition'").

Finally, even if McMillian could establish a prima facie case of FMLA interference, his claim still fails for lack of pretext. As discussed above and more fully in the opening brief, there is no evidence that the City denied leave for any improper or unlawful reason. To the contrary, the undisputed record shows that McMillian was not ill on November 27, 2023. Accordingly, his FMLA interference claim must be dismissed.

## CONCLUSION

Defendant the City of Aberdeen's motion for summary judgment should be granted in its entirety, dismissing all claims.

This, the 29th day of June, 2026.

PD.62250938.1

Respectfully submitted,

**PHELPS DUNBAR, LLP**


BY:　*/s/ Loden P. Walker*

G. Todd Butler, MB #102907
Loden P. Walker, MSB #105996
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Post Office Box 320159
Flowood, Mississippi  39232
Telephone: 601-352-2300
Telecopier: 601-360-9777
todd.butler@phelps.com
loden.walker@phelps.com

**ATTORNEYS FOR DEFENDANT CITY OF ABERDEEN**

12

## CERTIFICATE OF SERVICE

I, Loden P. Walker, do hereby certify that I have this date electronically filed the above

and foregoing *REPLY* with the Clerk of the Court which gave notice to the following:

DeMoreo Reddick
Reddick Law Firm, PLLC
P.O. Box 465
Okolona, MS 38860
662-436-4641 (t)
reddicklawfirm@yahoo.com

**Attorney for Plaintiff Barry McMillian**


So certified, this the 29th day of June, 2026.


/s/ Loden P. Walker_____
Loden P. Walker

13