**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 01-20364

IQ PRODUCTS COMPANY,

Plaintiff-Appellant,

VERSUS

ONYX CORPORATION; ONYX LABORATORIES INC.,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(H-99-CV-239)

August 23, 2002

Before DUHÉ, DeMOSS and CLEMENT, Circuit Judges.

DUHÉ, Circuit Judge:[1]

This appeal arises out of several alleged abuses of discretion by the district court before and during a jury trial which IQ Products Company ("IQ") argues prejudiced it such that a new trial is warranted. Because we find no abuse of discretion, no new trial is warranted and we AFFIRM the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

IQ manufactures and sells, among other things, nail polish

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

remover products. Onyx Corporation and Onyx Laboratories (collectively “Onyx”) sell nail care products, including nail polish remover products. Onyx labels its nail polish removers 100% Pure Acetone, Salon Formula, and Non Acetone. Wal-Mart carries Onyx’s Salon Formula and Non Acetone, but none of IQ’s competing products. IQ sought to discredit Onyx, and informed Wal-Mart of tests showing that Onyx’s Non Acetone in fact contained acetone. Upon learning this, Onyx changed Non Acetone to an acetone-free formula.

IQ filed suit in January 1999 claiming that Onyx sold nail polish removers to Wal-Mart in violation of the Lanham Act. Specifically, IQ claims Onyx made two false or misleading statements of fact about Non Acetone: that it did not contain acetone (when, in fact, it was at least 9% acetone), and that it did not contain water (when, in fact, it was at least 24% water); and one false or misleading statement of fact about Salon Formula: that it did not contain water (when, in fact, it was at least 20% water). IQ claims Onyx would not have been successful in selling its products to Wal-Mart (to the exclusion of IQ’s products) but for the false advertising and false labeling. IQ claims it suffered damages when its competing nail polish removers were kept off of Wal-Mart’s shelves.

The case was originally scheduled for trial in the May/June 2000 term, but following the filing of a third-party complaint in September 1999, the district court entered several amended

scheduling orders. The amended scheduling order entered on January 20, 2000 set the case for trial during the January/February 2001 trial term.

On August 11, 2000, IQ moved to amend its pleadings to expand its Lanham Act claims concerning nail polish removers, and to assert new claims concerning other products. When that motion had not been acted upon by November 22, (after the discovery deadline had passed, and only eight days before the Joint Pretrial Order was due), IQ moved to stay and terminate deadlines. On November 30, the district court granted IQ’s motion to amend only with regard to nail polish removers, and denied its motion to stay and terminate deadlines. IQ filed its First Amended Complaint the following day.

Onyx moved to strike the testimony of IQ Chief Executive Officer (“CEO”) P. Yohanne Gupta (“Gupta”). The district court referred that motion to a magistrate judge on February 2, 2001. On Friday, February 9, the district court set the case for trial on Monday, February 12. Both IQ and Onyx moved for a continuance on February 9, and the court denied those motions. Also that day, the district court vacated its order referring the motion to strike Gupta’s testimony to the magistrate judge. IQ renewed its motion for continuance on February 12, which the court denied. The jury trial ended in a verdict for Onyx and IQ timely appeals.

DISCUSSION

IQ argues that the district court abused its discretion, and that the abuses of discretion, individually and cumulatively,

deprived IQ of a fair trial and substantially prejudiced IQ's preparation and presentation of its case. Abuse of discretion is the appropriate standard of review of each alleged error. We will address each alleged abuse of discretion in turn.

*Denial of Motion for Continuance*

IQ sought to continue the trial because its CEO and sole expert witness, Gupta, was unavailable. He was in India at the bedside of his father, who was suffering from congestive heart failure. IQ interpreted the district court's referral of Onyx's motion to strike Gupta's testimony to a magistrate judge, with a submission date of February 20, as an indication that trial would not be set prior to February 20. IQ therefore allowed Gupta to leave the country on February 7, with an expected return date of February 17.

When, as here, a continuance is requested because a witness is unavailable, the movant must show (1) due diligence was exercised to obtain the attendance of the witness, (2) the witness would tender substantial favorable evidence, (3) the witness would be available and willing to testify, and (4) denial of the continuance would materially prejudice the movant. United States v. Olaniyi-Oke, 199 F.3d 767, 771 (5th Cir. 1999). Because IQ did not exercise due diligence to obtain Gupta's attendance or to ameliorate the effect of his absence, its argument fails.

IQ failed to keep Gupta available while its case was on the

trial docket. IQ argues that it did not anticipate, nor did it have reason to anticipate, that the case would go to trial before February 20. This is incorrect. This case was scheduled for the January/February 2001 docket. Because of the large number of criminal cases in the Southern District of Texas, which are governed by the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq., civil cases are slated for a two-month docket and litigants must be prepared to go to trial as soon as there is an opening in the schedule during those two months. IQ was fully prepared for trial before Gupta left for India. IQ's responsibility was to be prepared for trial in the entire January/February term, and by allowing Gupta to leave the country without ensuring it would remain ready for trial, it failed.

IQ had many options available. It could have moved the district court for a continuance before Gupta left the country, to ensure its case would not go to trial without Gupta. IQ could have moved to take a supplemental deposition of Gupta before allowing him to leave the country, to ensure his testimony would be heard. However, IQ did not fully exercise its responsibilities, and we will not reward its failures with a new trial.[2]

IQ claims it should have been granted a continuance due to

---

[2] IQ cites a case of another circuit, which has been vacated, as support for its argument. See Grochal v. Aeration Processes, Inc., 797 F.2d 1093, 1097 (D.C. Cir. 1986), vac'd per settlement, 812 F.2d 745 (D.C. Cir. 1987) (per curiam). This is not governing law, and moreover is based on a distinguishable factual situation.

"court-induced confusion". Specifically, IQ claims the district court's referral of the motion to strike and its subsequent decision to vacate that order caused confusion. However, the fact that IQ was confused does not make the decision to deny the continuance an abuse. If IQ was confused, it should have contacted the district court for clarification as to the status of the trial.

IQ cites two Seventh Circuit cases as support for its "court-induced confusion" argument. Neither is relevant. In Ellingsworth v. Chrysler, 665 F.2d 180 (7th Cir. 1981), the Seventh Circuit ruled that court-created confusion that forced a delay in trial excused counsel's failure to appear for trial and warranted relief from an adverse judgment. Id. at 184. That case is inapposite. There, the parties conferred with the court, which led to confusion. Here, IQ never conferred with the court. While the reference of the motion to the magistrate judge may have confused IQ, IQ made no effort to clear that confusion up with the court.

IQ further likens its case to Leong v. Railroad Transfer Serv., Inc., 302 F.2d 555 (7th Cir. 1962), where the Seventh Circuit reversed the district court's failure to vacate a default judgment entered against a party who failed to appear due to confusion about the trial date. Id. at 557. This too is inapposite. There, the Seventh Circuit held that it was an abuse of discretion for the district court to refuse to listen to reasons why the attorneys for both sides were absent from court, when that failure to attend was due to confusion about whether they would be summoned

to court. Here, only IQ was confused, and it did not attempt to timely explain or clarify its confusion with the court.

IQ finally claims the district court's reasons for denial of its motion for continuance were erroneous.[3] However, there is no precedent for our reliance on this to reverse the district court. We may only reverse the district court if we find that it abused its discretion, and these potentially mistaken statements do not rise to that level.

For the foregoing reasons, the district court's denial of IQ's motion for continuance is not an abuse of discretion.

*Refusal to Permit Deposition of Todd Matherly*

IQ claims the district court erred in fashioning the scope of discovery by refusing to permit it to take the oral deposition of Todd Matherly ("Matherly"), a buyer at Wal-Mart. IQ makes no colorable argument that the court's decision, while certainly harmful to its case, was an abuse of discretion, therefore, it cannot prevail. The reason proffered for failure to notice Matherly's deposition before the discovery cut off (that IQ needed a ruling first on its motion to amend its complaint) is not persuasive. It could have deposed Matherly about the products at issue and those that would have been placed at issue if its motion to amend was thereafter allowed.

[3] IQ claims the district court wrote that it had extended the trial date three times, and that no motion for continuance had been filed prior to February 9, and that both of these statements are false.

*Quashing the Trial Subpoena Served on Edward A. Blair*

IQ argues that the district court erred in quashing the trial subpoena it served on Edward A. Blair ("Blair"). A subpoena can be quashed for being untimely if it is in effect a motion at trial for more discovery. Comeaux v. Uniroyal Chem. Corp., 849 F.2d 191, 194 (5th Cir. 1988), abrogation on other grounds recognized, Carroll v. General Acc. Ins. Co. of Am., 891 F.2d 1174, 1176 (5th Cir. 1990).

Onyx delivered Blair's expert witness report to IQ on December 27, 2000. IQ served a subpoena on Blair at trial requiring him to produce allegedly relevant documents that it claims would have enabled it to impeach Onyx's damages expert. Onyx moved to quash the subpoena, arguing that IQ was trying to engage in discovery at the time of trial. IQ claimed it served the subpoena at trial because that was the first time it became clear that IQ would be unable to rebut Blair's testimony with that of Gupta, its own expert. The district court quashed IQ's subpoena on February 13.

IQ claims this was an abuse of discretion, as taking a deposition is not a predicate to serving a trial subpoena. However, trial subpoenas are not intended as a backdoor for discovery that could have been obtained before trial. Given IQ's failure to seek Blair's deposition before trial, the district court acted within its discretion. While different district court judges may reasonably have differed on whether to allow this subpoena, this judge's quashing of it was not an abuse of discretion.

*Refusal to Limit Blair's Testimony*

IQ argues that the district court erred by permitting Blair to testify at trial about opinions not expressed in his expert witness report.

The district court offered IQ the opportunity to depose Blair before he testified regarding his supplemental opinions, an opportunity IQ declined. Having done that, IQ cannot now succeed in its request for a new trial on the basis of Blair's testimony.

*Denial of Injunctive Relief*

IQ claims the district court erred in denying it injunctive relief. IQ sought a permanent injunction prohibiting Onyx from continuing to falsely label its products, first in its First Amended Complaint and again at the close of evidence. The district court reserved ruling until the jury completed deliberation. After the jury verdict in favor of Onyx, the district court entered a final judgment in favor of Onyx that did not address the claim for injunctive relief, but necessarily denied it.

IQ's claim for injunctive relief was an equitable issue, and therefore to be decided by the court and not the jury. Federal Rule of Civil Procedure 52(a) provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state its conclusions of law thereon...." Therefore, IQ argues the court's failure to issue findings of fact or conclusions of law on that claim was error.

However, this court recently held that "a claim becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, 177 F.3d 380. 383 (5th Cir. 1999). Even if it was error for the district court not to rule specifically on the motion for injunctive relief, or state findings and conclusions, the jury found that Onyx's advertising, whether false/misleading or not, did not damage IQ. Thus, the parties lack a legally cognizable interest.[4]

*Denial of Motion for New Trial*

IQ contends that the district court's denial of its motion for a new trial was error.

Despite the fact that some of the district court's decisions could reasonably have gone either way, we hold that none of them are an abuse of discretion. Absent abuse of discretion there can

---

[4] We do not accept Onyx's argument that the injunction is moot because it voluntarily changed its labels. As this court recently stated in Pederson v. Louisiana State University, 213 F.3d 858, 874 (5th Cir. 2000),

> it is well established that the voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. But jurisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that there is no reasonable expectation... that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. The burden of demonstrating mootness is a heavy one.

be no new trial.

## CONCLUSION

While this case may not have been managed ideally, none of the district court’s rulings rise to the level of abuse of discretion. Because we find no abuse of discretion, we AFFIRM the decision of the district court.

AFFIRMED.