**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**BARRY MCMILLIAN** **PLAINTIFF**

**VS.** **CIVIL ACTION NO.: 1:24-CV-199-GHD**

**CITY OF ABERDEEN, MISSISSIPPI**
**AND JOHN DOES 1-20** **DEFENDANTS**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

There's a well-settled difference between trial subpoenas and discovery subpoenas, and Plaintiff's motion fails to recognize the difference or cite any authority to the contrary. *See, e.g.*, *Mortgage Info. Servs., Inc. v. Kitchens*, 201 F.R.D. 562, 567 (W.D. N.C. 2002) ("The Court notes, however, that situations may arise in which a subpoena duces tecum may not constitute discovery, and therefore may properly be filed and served following the close of the discovery period." (citations omitted)). "Trial subpoenas may be used to secure documents at trial for the purpose of memory refreshment or trial preparation," *Puritan Inv. Corp. v. ASLL Corp.*, 1997 WL 793569, at *1 (E.D. Pa. Dec. 9, 1997), and more importantly, for impeachment, *Joseph P. Carroll Ltd. v. Baker*, 2012 WL 1232957, at *2–3 (S.D.N.Y. Apr. 12, 2012) (gathering cases); *Malmberg v. United States*, 2010 WL 1186573, at *3 (N.D.N.Y. Mar. 24, 2010) ("[B]ecause Defendant intends to use the documents it has requested in these subpoenas for cross-examination and impeachment only, they are properly classified as trial subpoenas."). Due to Plaintiff's shifting sideshow that he presumably intends to put before the jury, Defendant seeks the narrowly tailored records outlined in the subpoena at issue exclusively for cross-examination to refresh Plaintiff's and Triron Brown's recollection, impeach them, and to prevent potential perjury in this Court. Plaintiff's motion should be denied.

## BACKGROUND

In this retaliation case, the City terminated Plaintiff because he stole time from the City. At the time of termination, the City never mentioned Plaintiff's protected activity and focused exclusively on the fact that he asked Triron Brown to clock him into and out of work on a day in which Plaintiff was vacationing in Las Vegas and not working. Doc. No. 110-16, at 5–6. Triron Brown signed a written statement and even told the City's Board as they considered Plaintiff's termination in executive session that Plaintiff texted Brown, asked Brown to clock him into and out of work, and that Brown did so. *E.g.*, Doc. Nos. 110-5; 110-6, at 8; 110-7; 110-9; 114-28. The text messages are in the record, reading

**Brown can you clock me in?**
**[Plaintiff's Timekeeper Number]**

**Bet I got u**

**Thank you**

**Anytime [100 emoji]**

**Clock me out right now if**
**you can**

**We over here fixing this**
**leak on vine street**

**Okay when you get a chance!**
**Clock me out! Thanks**

**Ok bet and u welcome**

Doc. Nos. 110-9; 114-28.

The City terminated Plaintiff based upon a reasonable belief at the time that Plaintiff asked Brown to clock Plaintiff into and out of work on a day in which Plaintiff performed no work for the City. Doc. No. 110-4, at 4; Doc. No. 110-9. That's all that matters—what the City subjectively

considered and believed at the time of its decision. Plaintiff seeks to sow doubt in that decision by putting on a red-herring sideshow before the jury regarding the *correctness* of the City's understanding of the facts—something that is totally irrelevant to the retaliation analysis. *See* Doc. No. 126, at 16; *see also, e.g.*, *Owens v. Circassia Pharma, Inc.*, 33 F.4th 814, 829 (5th Cir. 2022).

Fast forward to Triron Brown's deposition on February 26, 2026. When shown the above text messages, Brown confirms that the text messages were received by him and says, "Yeah, that was our [his and Plaintiff's] text right there. Q. You and [Plaintiff]? A. Uh-huh." Doc. No. 114-9, at 9. Brown then changed course testifying that he couldn't remember who sent those text messages; maybe it was Plaintiff or maybe it was his cousin Undrea Hogan. *Id.* at 10. Plaintiff similarly testified that he couldn't "recall" whether those were text messages were sent by Plaintiff to Brown. Doc. No. 114-5, at 78. The discovery deadline passed with the only testimony being that Triron Brown told the City's Board that Plaintiff asked him to aid Plaintiff in stealing time from the City and that, as of February 2026, neither Brown nor the Plaintiff could remember the text exchange.

Then, in June 2026, Plaintiff's response to the City's motion for summary judgment took the position that the text message exchange that the City's Board considered "was completely misidentified," as Plaintiff characterized Brown's deposition testimony to say that "the underlying unredacted text exchange had absolutely nothing to do with Barry McMillian" and that Brown "verified that the thread logged a routine operational coordination between himself and his cousin, water laborer Andre [sic] Hogan." Doc. No. 126, at 16.

In other words, Triron Brown's position has changed immensely from 2023, throughout discovery, and well after the discovery deadline. Here's the timeline of his shifting story:

- November and December 2023 – Brown tells the Board that Plaintiff texted Brown asking Brown to clock Plaintiff into and

out of work on a day in which Plaintiff was vacationing in Las Vegas.

- February 2026 – Neither Plaintiff nor Brown can remember if that was correct, testifying that it may have been a text message from his cousin, rather than the Plaintiff

- June 2026 – Plaintiff had "absolutely nothing to do with" the text messages to Brown.

Of course, whether Plaintiff actually sent the text messages is irrelevant, as the only relevant inquiry is what the City's Board subjectively considered and believed at the time, not whether the City's Board held a *correct* understanding of the facts. *See, e.g.*, *Owens*, 33 F.4th at 829. But well after the discovery period closed, Plaintiff's position anchored to the idea that he had "absolutely nothing to do with" those text messages which were considered by the Board, and now, the City understands that Plaintiff intends to elicit testimony to that effect at trial.

To prevent Plaintiff and Triron Brown from perjuring themselves before this Court and the jury, to cross-examine and impeach them, and to refresh their recollection to the extent they cannot "recall" sending and receiving the text messages, the City issued a trial subpoena for Triron Brown's phone records from AT&T for only the day in which those text messages were sent. Plaintiff cannot meet his burden to quash the subpoena.

## LEGAL STANDARD

"In a civil case, the burden is on the party moving to quash a subpoena duces tecum to show why documents responsive to the subpoena should not be produced." *Scott v. So. Elect. Supply Co., Inc.*, 2013 WL 12411044, at *1 (N.D. Miss. June 11, 2013). Whether to deny a motion to quash or a protective order is committed to this Court's discretion. *See, e.g., Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 817 (5th Cir. 2004).

## ARGUMENT

There's a difference between trial subpoenas and discovery subpoenas. *See, e.g.*, *Mortgage Info. Servs., Inc. v. Kitchens*, 201 F.R.D. 562, 567 (W.D.N.C. 2002) ("The Court notes, however, that situations may arise in which a subpoena duces tecum may not constitute discovery, and therefore may properly be filed and served following the close of the discovery period." (citations omitted)). Trial subpoenas may be used to obtain documents beyond the discovery deadline for purposes of impeachment and refreshment of a witness's recollection. *Jones v. Abel*, 2025 WL 3292468, at *4 (S.D.N.Y. Nov. 26, 2025) ("A party may under certain circumstances issue a trial subpoena after the close of discovery when it 'intends to use the documents it has requested . . . for cross-examination and impeachment only.'" (quoting *Agapito v. AHDS Bagel, LLC*, 2018 WL 3216119 (S.D.N.Y. May 17, 2018)); *Upstate Shredding LLC v. Northeastern Ferrous, Inc.*, 2015 WL 12748319 (N.D.N.Y. 2015) (denying motion to quash); *Joseph P. Carroll Ltd. v. Baker*, 2012 WL 1232957, at *2–3 (S.D.N.Y. Apr. 12, 2012) (denying motion to quash and gathering cases); *Afcan v. United States*, 2011 WL 13186148, at *1 (D. Alaska 2011) (denying motion to quash to the extent documents' use was limited to cross-examination); *Armenian Assembly of Am., Inc. v. Cafesjian*, 2010 WL 11595466, at *1–2 (D.D.C. 2010) (denying motion for protective order); *Malmberg v. United States*, 2010 WL 1186573, at *3 (N.D.N.Y. Mar. 24, 2010) ("[B]ecause Defendant intends to use the documents it has requested in these subpoenas for cross-examination and impeachment only, they are properly classified as trial subpoenas."). That's because documents to be used exclusively for those purposes aren't subject to the typical strictures of discovery, like disclosure obligations or deadlines.

The City plans to use the subpoenaed documents for impeachment purposes only—the only probative value that those documents carry. With every post-discovery indication that Plaintiff

intends to elicit testimony from himself and Triron Brown that Plaintiff has "absolutely nothing to do with" the text messages between he and Triron Brown as part of the irrelevant sideshow effort by Plaintiff to demonstrate that the City's decision was premised upon mistaken facts, the City and this Court have every interest in stopping Plaintiff from suborning perjury and in ensuring that truthful testimony is presented on the point. *See, e.g.*, *Washington v. Texas*, 388 U.S. 14, 21 (1967) (recognizing "the court's interest in preventing perjury," though the Court held that wasn't a sufficient basis to exclude witnesses altogether).

The documents sought will impeach any such testimony. Triron Brown told the City via verbal and written communication that Plaintiff sent the text messages at issue. He again said so in his deposition before walking back that statement to an inability to recall. Should Plaintiff seek to elicit testimony that Plaintiff had "absolutely nothing to do with" the text messages, the phone records will confirm or deny the truthfulness of that testimony, though there is every indication that Plaintiff had everything to do with those text messages, evidenced by the fact that Plaintiff is moving to quash a subpoena that would prove him to be correct if he were telling the truth to this Court.

The documents have no probative value other than impeachment. The ultimate question in this trial is the subjective intent and beliefs of a majority of the City's Board. The correctness of the City's understanding or the facts upon which the City relied has no bearing to whether Plaintiff's claims have merit. *See, e.g.*, *Owens*, 33 F.4th at 829. Thus, evidence of who sent the text messages at issue is probative only to the extent it has bearing on the veracity of Plaintiff's and Brown's anticipated testimony. That is quintessential impeachment evidence. And the request is exceedingly narrow, requesting phone records for one phone number on one particular date. In

other words, it asks only for information to be used for impeachment or refreshment of the witnesses' recollection on a narrow and specific line of questioning.

## CONCLUSION

Triron Brown's story changed from 2023 to his February 2026 deposition, within that deposition, and changed again even after the discovery deadline in this case. Moreover, Plaintiff maintained in his own deposition that he had no idea whether he sent Brown a text message with Plaintiff's social security number included, and his story shifted after the close of discovery to be that Plaintiff had "absolutely nothing to do with" the text messages. The risk of perjury is real, and the City should be able to use narrowly tailored phone records to impeach their testimony or refresh their recollections should they not be able to recall who sent the texts. And even if this Court finds that the subpoena at issue isn't a trial subpoena, the delay in sending the subpoena is reasonable in light of Plaintiff's shifting post-discovery arguments and Triron Brown's shifting story. The motion should be denied.

Dated: October 5, 2026.

Respectfully submitted,

**PHELPS DUNBAR, LLP**
BY: */s/ Channing J. Curtis*
W. Thomas Siler, Jr., MB #6791
G. Todd Butler, MB #102907
Loden P. Walker, MB #105996
Channing J. Curtis, MB #106637
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Post Office Box 320159
Flowood, Mississippi 39232
Telephone: 601-352-2300
Telecopier: 601-360-9777
tommy.siler@phelps.com
todd.butler@phelps.com
loden.walker@phelps.com
channing.curtis@phelps.com
**ATTORNEYS FOR DEFENDANT CITY OF ABERDEEN**

**CERTIFICATE OF SERVICE**

I, Channing J. Curtis, do hereby certify that I have this date electronically filed the above and foregoing *MEMORANDUM* with the Clerk of the Court using the CM/ECF system which gave notice to all counsel of record.

So certified, this the 5th day of October 2026.

*/s/ Channing J. Curtis*
Channing J. Curtis



PD.64225813.1