**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**BARRY MCMILLIAN** **PLAINTIFF**

**VS.** **CIVIL ACTION NO.: 1:24-CV-199-GHD**

**CITY OF ABERDEEN, MISSISSIPPI**
**AND JOHN DOES 1-20** **DEFENDANTS**

**DEFENDANT'S URGENT AND NECESSITOUS OBJECTIONS TO MAGISTRATE JUDGE'S ORDER GRANTING PLAINTIFF'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

With greatest respect for the Magistrate Judge, the order granting Plaintiff's motion to quash is clearly erroneous and provides insufficient reasoning and authority to reach its conclusions. Thus, the City objects to the Magistrate Judge's order, as all four reasons supporting that order are clearly erroneous and merit reversal. *See* L.U. Civ. R. 72(a)(1); Fed. R. Civ. P. 72(a).

First, the Magistrate Judge took issue with the fact that the documents subject to the subpoena *duces tecum* were to be delivered to Defendant's counsel rather than to the courthouse. Doc. No. 161, at 2 ("The subpoena commands production of the subject records not at trial, but at the mailing address of the City's attorneys in this matter prior to trial."). Neither the Magistrate Judge nor the Plaintiff cited any authority holding that a trial subpoena for documents to be used for impeachment must be mailed to the courthouse rather than to counsel. And the lack of authority on that point is telling—query to whom such documents would ever be sent or how counsel would obtain the documents for trial preparation and impeachment from whatever court custodian might receive the documents. The use of trial subpoenas can't practically be squared with such a requirement for which there is no authority that Defendant can find—how else would counsel practically plan for and use documents obtained pursuant to a trial subpoena for the very purposes

of trial subpoenas (trial preparation, memory refreshment, and impeachment) without obtaining and reviewing the documents before arriving trial?[1]

Second, the Magistrate Judge appears to take the position, as does the Plaintiff, that *all* subpoenas *duces tecum* are discovery devices, neglecting the distinction between *trial subpoenas* and *discovery subpoenas*. Doc. No. 161, at 3; *but see, e.g.*, *Mortgage Info. Servs., Inc. v. Kitchens*, 201 F.R.D. 562, 567 (W.D. N.C. 2002) ("The Court notes, however, that situations may arise in which a subpoena duces tecum may not constitute discovery, and therefore may properly be filed and served following the close of the discovery period." (citations omitted)).

Of course, there is a distinction for subpoenas *duces tecum* which seek documents that can be used only for trial preparation, memory refreshment, and impeachment. *Jones v. Abel*, 2025 WL 3292468, at *4 (S.D.N.Y. Nov. 26, 2025) ("A party may under certain circumstances issue a trial subpoena after the close of discovery when it 'intends to use the documents it has requested . . . for cross-examination and impeachment only.'" (quoting *Agapito v. AHDS Bagel, LLC*, 2018 WL 3216119 (S.D.N.Y. May 17, 2018)); *Upstate Shredding LLC v. Northeastern Ferrous, Inc.*, 2015 WL 12748319 (N.D.N.Y. 2015) (denying motion to quash) ; *Joseph P. Carroll Ltd. v. Baker*, 2012 WL 1232957, at *2–3 (S.D.N.Y. Apr. 12, 2012) (denying motion to quash and gathering cases); *Afcan v. United States*, 2011 WL 13186148, at *1 (D. Alaska 2011) (denying motion to quash to the extent documents' use was limited to cross-examination); *Armenian Assembly of Am., Inc. v. Cafesjian*, 2010 WL 11595466, at *1–2 (D.D.C. 2010) (denying motion for protective order); *Malmberg v. United States*, 2010 WL 1186573, at *3 (N.D.N.Y. Mar. 24, 2010) ("[B]ecause Defendant intends to use the documents it has requested in these subpoenas for

[1] While the City maintains that its amended subpoena *duces tecum* is proper, it is willing to take a belt-and-suspenders approach by subpoenaing a witness from AT&T to appear at trial as an impeachment witness and commands that witness to bring Triron Brown's phone records with the witness.

cross-examination and impeachment only, they are properly classified as trial subpoenas."); *Puritan Inv. Corp. v. ASLL Corp.*, 1997 WL 793569, at *1 (E.D. Pa. Dec. 9, 1997) ("Trial subpoenas may be used to secure documents at trial for the purpose of memory refreshment or trial preparation"). Defendant has explained how the documents at issue are intended to be used at trial—for impeachment purposes alone. Doc. No. 154. And to be sure, Defendant explained how the documents requested have *no relevance* to the claims pressed by Plaintiff *other than impeachment and memory refreshment*—both prime purposes of trial subpoenas *duces tecum*. Doc. No. 154, at 3, 6–7.

Next, the Magistrate Judge concluded that the documents at issue should have been the subject of a discovery request within the discovery period. Doc. No. 161, at 3–4. But discovery is limited to evidence relevant to the claims asserted by Plaintiff or defenses asserted by Defendant. Fed. R. Civ. P. 26(b)(1) ("Unless otherwise *limited* by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* ***and*** *proportional to the needs of the case* . . . ." (emphasis added)). Where the documents are not relevant, Defendant had no power under the discovery rules to request the documents under the discovery rules. *Id.* Neither the Plaintiff, nor the Magistrate Judge, offered any explanation for how the documents at issue are relevant in any way, and for good reason—they're not. They have no bearing on whether the Board had retaliatory animus. And they have nothing to do with Defendant's affirmative defenses. The sole purpose of the documents which are the subject of the subpoena *duces tecum* is impeachment, i.e., the truthfulness of Triron Brown and Barry McMillian's testimony, and, to the extent either Triron Brown or Barry McMillian can't remember who sent the text messages at issue, for refreshment of their memory. Both reasons fit the purposes of trial subpoenas. *See supra*, at 2.

Finally, assuming that the records at issue are relevant and could have been properly sought under the discovery rules, the Magistrate Judge concluded that there was no excuse for Defendant's failure to seek those records before April 13. That reasoning doesn't match up with the facts of this case. Triron Brown admitted to both Mayor Scott and the Board in November and December 2023 that Plaintiff texted Brown, asking Brown to clock him in and out of work:

**BM**

**Barry**

**Brown can you clock me in?**
**[Plaintiff's Timekeeper Number]**

**Bet I got u**

**Thank you**

**Anytime [100 emoji]**

**Clock me out right now if**
**you can**

**We over here fixing this**
**leak on vine street**

**Okay when you get a chance!**
**Clock me out! Thanks**

**Ok bet and u welcome**

P-52; Doc. Nos. 110-9; 114-28; *see also, e.g.*, Doc. Nos. 110-5; 110-6, at 8; 110-7; 114-28. Then, in February 2026, Brown and Plaintiff at best testified that they couldn't recall whether Plaintiff sent those text messages to Brown. Doc. No. 114-9, at 9–10; Doc. No. 114-5, at 78. The discovery deadline passed in April 2026, and two months later, in opposition to the City's motion for summary judgment, Plaintiff took the unsupported position that "the underlying unredacted text exchange had absolutely nothing to do with Barry McMillian" and that Brown "verified that the

thread logged a routine operational coordination between himself and his cousin, water laborer Andre [sic] Hogan." Doc. No. 126, at 16. In other words, Plaintiff's and Brown's story flipped *after* the discovery deadline. And the City's narrow request beyond that deadline for phone records for one person on one day is excusable because of the story advanced by Plaintiff well after discovery closed and that wasn't supported by evidence in the record produced in discovery. To hold otherwise would permit Plaintiff and Brown to blind side the City at trial with no way to rebut their false testimony and would permit both witnesses to likely suborn perjury in this Court and before the jury on a point that is totally irrelevant to the claim pressed by Plaintiff. Indeed, the only question that the jury faces is whether a majority of the Board subjectively based their individual decisions to vote for Plaintiff's termination because Plaintiff filed his March 7, 2022 EEOC Charge—not whether the Board had a correct understanding of the facts. *Owens v. Circassia Pharma, Inc.*, 33 F.4th 814, 829 (5th Cir. 2022).

The Magistrate Judge's premise is clearly wrong. Discovery is limited to evidence relevant to the parties claims or defenses, and where the records at issue here bear no relevance to Plaintiff's claims or the City's defenses and where neither Plaintiff nor the Magistrate Judge explained how the records are relevant, there's no basis for saying that the City should have sought the records in discovery. Indeed, the records are to be used only for impeachment or refreshment of a witnesses memory—the very bases of trial subpoenas, which neither the Plaintiff nor the Magistrate Judge offered authority to contradict. The Magistrate Judge's order should be vacated, and the City's subpoena should issue in an expeditious manner.

Dated: October 12, 2026.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY: */s/ Channing J. Curtis*

W. Thomas Siler, Jr., MB #6791
G. Todd Butler, MB #102907
Loden P. Walker, MB #105996
Channing J. Curtis, MB #106637
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Post Office Box 320159
Flowood, Mississippi 39232
Telephone: 601-352-2300
Telecopier: 601-360-9777
tommy.siler@phelps.com
todd.butler@phelps.com
loden.walker@phelps.com
channing.curtis@phelps.com

**ATTORNEYS FOR DEFENDANT CITY OF ABERDEEN**

**CERTIFICATE OF SERVICE**

I, Channing J. Curtis, do hereby certify that I have this date electronically filed the above and foregoing *OBJECTIONS* with the Clerk of the Court using the CM/ECF system which gave notice to all counsel of record.

So certified, this the 12th day of October 2026.

*/s/ Channing J. Curtis*
Channing J. Curtis