**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

| | |
|---|---|
| **BARRY MCMILLIAN** | **PLAINTIFF** |
| **v.** | **CASE NO. 1:24-cv-00199-GHD-RP** |
| **CITY OF ABERDEEN, MISSISSIPPI** | **DEFENDANT** |

---

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR A NEW TRIAL PURSUANT TO RULE 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE

---

COMES NOW the Plaintiff, Barry McMillian, by and through his attorney, DeMoreo Reddick, and respectfully moves this Court to set aside the jury verdict entered in this cause and grant a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. In support thereof, Plaintiff would show unto the Court the following:

## I. RELEVANT PROCEDURAL STANDARD

Under Rule 59(a) of the Federal Rules of Civil Procedure, a District Court may grant a new trial for any reason for which a new trial has heretofore been granted in an action at law in federal court. The United States Court of Appeals for the Fifth Circuit holds that a motion for a new trial is appropriate if the court finds that the trial was unfair or that prejudicial error occurred during the proceedings. While trial courts possess broad, inherent authority to manage courtroom logistics and enforce docket pacing under Rule 16 of the Federal Rules of Civil Procedure, that discretion is guided by the core necessity of maintaining absolute visual neutrality before a jury panel. A new trial is procedurally warranted under Rule 59 of the Federal Rules of Civil Procedure where the cumulative, unintended effect of trial management initiatives inadvertently restricts the building of the record or projects an uneven evidentiary dynamic that impacts the finder of fact.

## II. RELEVANT PROCEDURAL BACKGROUND

This matter involved claims brought pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Following a three-day trial, the jury returned a verdict in favor of the Defendant. Although the Pretrial Order expressly approved an estimated trial length of 3 to 5 days to accommodate the parties' contested issues and witness lists (Doc. #137, Paragraphs 12–13, 16), the proceedings were compressed into the bare three-day minimum from October 19, 2026, through October 21, 2026. Furthermore, during deliberations on October 21, 2026, the jury informed the Court that it could not reach a unanimous verdict after approximately three hours, prompting the Court to deliver a supplemental Allen instruction before the jury ultimately returned a verdict for the Defendant, the City of Aberdeen. Final Judgment was entered on the civil docket on October 22, 2026 (Doc. #186). The record reveals that specific courtroom administration and administrative time management choices operated to create an unintended structural disadvantage for the Plaintiff's presentation, necessitating procedural review under Rule 59 of the Federal Rules of Civil Procedure. Also, because employment discrimination litigation frequently turns on cumulative factual inferences, circumstantial timelines, and witness credibility, a structurally neutral trial environment is essential.

## III. PROCEDURAL GROUNDS FOR A NEW TRIAL

### GROUND I: The Inadvertent Procedural Disparity in Room Management and Time Controls Placed on Plaintiff's Case.

A core principle of federal trial practice is the preservation of a balanced presentation before the finder of fact. During the presentation of the Plaintiff's case-in-chief, the record reflects an unintended disparity regarding the strict administrative boundaries placed on the presentation of Plaintiff's case. Specifically, despite having up to five days allotted under the

Pretrial Order (Doc. #137, Paragraph 16), the Court applied strict time controls and expressed public constraints regarding the length and volume of active examinations. Conversely, the Defendant's presentation proceeded with greater operational latitude. Because jurors naturally defer to the bench as the primary authority on relevance, repeated administrative expressions regarding the duration of a presentation carry a high risk of signaling to the panel that the underlying evidence is cumulative or less deserving of serious weight. Under Fifth Circuit precedent, while a trial judge has wide discretion over the "tone and tempo" of a trial, the trial court's efforts to move the trial along may not come at the cost of "strict impartiality". *See Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 579 (5th Cir. 2001). Here, compressing a five-day trial schedule into three days while repeatedly commenting on the length of Plaintiff's questioning created precisely that prejudicial imbalance.

**GROUND II: The Unintended Prejudicial Impact of Public Scheduling Announcements.**

Of particular procedural concern was an incident where the Court noted in the presence of the jury that the hour was growing late, explicitly identifying a specific juror's need to make a long commute home to the northeast corner of the Northern District of Mississippi. While this remark was undoubtedly intended as a routine, helpful logistical update, its delivery before the panel placed the Plaintiff's right to comprehensive examinations in direct competition with the personal convenience of the jury. Laying out a specific juror's transit obligations in open Court inevitably heightened the time pressure on the panel to conclude the proceedings quickly, inadvertently casting the ongoing presentation as an unnecessary delay. Under Fifth Circuit precedent, a trial judge must remain neutral and ensure that efforts to manage the pace of a trial do not compromise fundamental fairness. *See Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). Highlighting a specific juror's long commute in open Court risked creating

the impression that Plaintiff's ongoing examinations were delaying the panel's departure. That same scheduling urgency carried into deliberations on October 21, 2026, when the panel initially reported it could not reach a unanimous verdict after approximately three hours before ultimately returning a verdict following a supplemental Allen instruction from the Court.

**GROUND III: The Structural Restriction on Essential Witness Questioning.**

The cumulative effect of these time-related interruptions placed severe pressure on the development of the record. This administrative compression directly impacted the questioning of key witnesses and limited the full development of testimony necessary to establish pretext under Title VII and 42 U.S.C. § 1981. Under Fifth Circuit precedent, a plaintiff establishes pretext in an employment discrimination or retaliation action either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. S*ee Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Restricting counsel's examination of key witnesses regarding municipal timekeeping practices, comparator discipline, and the circumstances surrounding Plaintiff's termination directly impaired Plaintiff's ability to make that required evidentiary showing.

**GROUND IV: The Official Record Accurately Captures the Relevant Trial Interactions.**

The official courtroom minutes, docket filings, and audio record of the proceedings capture the exact sequence of these administrative interactions, interruptions, and time controls. Specifically, the Pretrial Order (Doc. #137, Paragraph 16) confirms the 3-to-5-day trial window, and the Court's trial minutes and official record document the exchange involving the juror's long commute as well as the three-hour deliberation period, establishing an objective basis for reviewing the procedural friction imposed upon the Plaintiff's presentation without requiring a formal transcript at this post-trial stage.

**GROUND V: The Cumulative Effect of Courtroom Administration Actions Requires Review.**

While individual administrative remarks or time limits might not independently require a new trial, the cumulative effect of these actions must be evaluated collectively. Under Fifth Circuit precedent, improper comments from the bench or by counsel will not warrant reversal unless they so permeate the proceedings that they impair substantial rights and cast doubt on the jury's verdict. *See Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157 n.1 (5th Cir. 1993) (*quoting Dixon v. International Harvester Co.*, 754 F.2d 573 (5th Cir.1985)). Here, the repeated time restrictions, expressions of administrative controls, and open-court remarks regarding a juror's long commute permeated the presentation of Plaintiff's case-in-chief, creating an overall trial environment that disproportionately favored the defense and compromised the baseline fairness of the proceedings.

**GROUND VI: The Concrete Impact of the Trial Atmosphere on the Final Outcome.**

Because this civil rights action turned entirely on intent and witness credibility, the strict time pressures directly impacted the jury's focus during deliberations. This impact is underscored by the fact that the jury initially reported an inability to reach a unanimous verdict after approximately three hours of deliberations on October 21, 2026, before ultimately returning a verdict after receiving a supplemental Allen instruction from the Court—a sequence that cannot be separated from the urgency created by the compressed three-day schedule and open-court remarks regarding juror travel logistics. The resulting verdict cannot be separated from these operational imbalances, providing a solid legal basis for challenging the final ruling. As was stated earlier, under Federal Rule of Civil Procedure 59(a), a new trial is warranted where prejudicial courtroom pressures permeate the proceedings and cast doubt on the resulting verdict.

*See Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157 n.1 (5th Cir. 1993) (*quoting Dixon v. International Harvester Co.*, 754 F.2d 573 (5th Cir.1985)). Because liability in this retaliation case turned entirely on witness credibility and employer intent, the cumulative time pressure placed upon the panel directly affected the deliberative process and warrants a new trial.

**GROUND VII: Recognized Due Process and Federal Standards Support Post-Trial Relief.**

Established federal case law, judicial conduct standards, and due process principles address these exact operational circumstances. When courtroom management styles cross from reasonable docket control into conduct that actively impairs the ability to develop a case, post-trial relief under Rule 59 of the Federal Rules of Civil Procedure is the appropriate procedural remedy to restore balance. In the employment discrimination context, the Fifth Circuit has recognized that while trial courts have discretion to manage their dockets, rigid time limits and judicial pressure to expedite proceedings must not be applied in a manner that prevents a party from fairly presenting its case. *See Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). Where courtroom time constraints cross from reasonable docket management into impairing a litigant's ability to develop key evidence, a new trial under Rule 59(a) of the Federal Rules of Civil Procedure is required to restore fundamental fairness.

**GROUND VIII: The Injection of Unpled and Non-Disclosed Impeachment Inquiries Concerning Personal Travel.**

A new trial is further warranted under Rule 59 of the Federal Rules of Civil Procedure due to the injection of highly prejudicial, unpled, and non-disclosed external matters during the cross-examination of the Plaintiff. Over objection, the defense was permitted to interrogate the Plaintiff extensively regarding personal travel and personal social media disclosures, specifically highlighting the Plaintiff’s past trips to California, New York, and most recently the Plaintiff’s

trip to Atlanta, Georgia which was undertaken during the weekend immediately prior to the commencement of this trial. This line of questioning introduces significant procedural errors that directly undermined the trial layout such as:

1. **Procedural Surprise and Absence of Disclosed Evidence:** The defense introduced no physical records, documents, or tangible tracking items into the trial record, relying instead on surprise oral cross-examination regarding the Plaintiff's private travel, trips, or vacations that were completely unpled and non-disclosed. Raising these outside travel activities past the established scheduling order deadline resulted in a trial-by-ambush dynamic, denying any meaningful opportunity to review or rebut the substance of the inquiries.

2. **Irrelevance to Substantive Statutory Elements:** While the Pretrial Order stipulated that the Plaintiff returned from a trip to Las Vegas on November 27, 2023 (Doc. #137, Paragraph 9(a)(3)), the Plaintiff's specific trips to California, New York, and most recently his weekend trip to Atlanta, Georgia which was nearly three years later—or his leisure choices over a pre-trial weekend—bear no rational or legal relationship to the statutory elements of a Title VII or 1981 retaliation claim or the underlying historical employment actions from 2023. The inquiry served no valid evidentiary purpose under Rule 401 of the Federal Rules of Evidence.

3. **Unfair Prejudicial Impact on the Panel:** The primary effect of parading the Plaintiff's past trips and travel, which includes his pre-trial weekend travel to Atlanta, Georgia, before the jury panel was to project an external characterization of non-cooperation or his lack of gravity regarding the litigation. This non-probative inquiry served strictly to inflame the jury panel's perception, distracting from the objective physical evidence and statutory proofs of liability. Under Federal Rules of Evidence 401, 402, and 403, evidence that has no tendency to make a fact of consequence more or less probable is inadmissible, and even marginally relevant

inquiries must be excluded where their probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Also, where erroneous evidentiary rulings permit irrelevant and inflammatory inquiries that affect a party's substantial rights and cast doubt on the verdict, a new trial is warranted under Federal Rule of Civil Procedure 59(a) and Rule 61. *See Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157 n.1 (5th Cir. 1993) (*quoting Dixon v. International Harvester Co.*, 754 F.2d 573 (5th Cir.1985)). Permitting Defendant to cross-examine Plaintiff about an unrelated past trip to California, New York, and a weekend trip to Atlanta, Georgia on the eve of trial injected unfair character prejudice into a closely contested credibility dispute and directly affected Plaintiff's substantial rights.

**4. Exploitation of the Improper Travel Testimony During Closing Argument:** The prejudicial impact of this line of questioning was compounded during closing argument, when defense counsel expressly urged the jury not to find for the Plaintiff on the grounds that he merely sought a monetary award to fund his next trip. Rather than addressing the statutory elements of retaliation under Title VII and 42 U.S.C. § 1981, this argument weaponized the improperly admitted travel inquiries to appeal to juror bias and trivialize Plaintiff's civil rights claims. Under Fifth Circuit precedent, closing arguments that invite the jury to decide a case based on passion, prejudice, or improper character attacks rather than the evidence warrant a new trial where they impair substantial rights and cast doubt on the verdict. *See Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157 n.1 (5th Cir. 1993) (quoting *Dixon v. International Harvester Co.*, 754 F.2d 573 (5th Cir.1985)).

**GROUND IX: Procedural Deadlines and Record Preservation Have Been Fully Met.**

All relevant objections and procedural exceptions were timely preserved during the trial. This motion is brought well within the strict 28-day filing window following the entry of judgment on the civil docket on October 22, 2026 (Doc. #186), ensuring the issues are perfectly postured for immediate judicial consideration.

## IV. CONCLUSION AND PRAYER

While the Plaintiff explicitly recognizes that the Court maintained absolute professional decorum and structured its management choices solely in the interest of docket efficiency, the cumulative, practical effect of these asymmetric time restrictions and public scheduling remarks nonetheless created an unequal trial environment. This operational compression stripped the Plaintiff of a fair opportunity to fully present his civil rights claims. Furthermore, the defense's extensive questioning regarding private, pre-trial travel introduced an entirely non-probative element that likely operated to inflame the jury panel's perception. Also, because the combined impact of severe time constraints and unfair character insinuation compromised the baseline fairness of the proceedings, a new trial is required to serve the interests of justice.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff, Barry McMillian, respectfully requests that this Court grant this Motion, set aside the jury verdict, and enter an Order scheduling a new trial in this matter.

Respectfully submitted on this the 17th day of November, 2026.

By: /s/ DeMoreo Reddick, Esq.
DEMOREO REDDICK, ESQ.
COUNSEL FOR THE PLAINTIFF,
BARRY MCMILLIAN

OF COUNSEL:

REDDICK LAW FIRM, PLLC
DEMOREO REDDICK, ESQ.
MS BAR NO.: 103747

P.O. BOX 465
OKOLONA, MS 38860
PH: 662-436-4641
FAX: 662-256-3582

**CERTIFICATE OF SERVICE**

I, DeMoreo Reddick, Attorney for the Plaintiff, hereby certify that the foregoing document has been delivered to all counsel of record, either by depositing a copy of same in the United States mail, first class postage prepaid, by hand delivery, or electronic delivery, this the 17th day of November, 2026.

/s/ DeMoreo Reddick, Esq.
DEMOREO REDDICK, ESQ.